JOHN REED *et al.*

*v.*

ANDREW J. REED *et al.*

*Filed at Springfield November 1, 1890.*

1. RESULTING TRUST—*whether it arises.* A trust will not result to one who pays a part only of the purchase price of land conveyed to another, unless it be some definite portion of the entire consideration, as, one-half, one-third, or the like. The trust can only arise from the original transaction, and at the time it takes place, and at no other time. The funds must be advanced or invested at the time the purchase is made.

2. It is not possible to raise such a trust by the subsequent application of the money of a third person in satisfaction of the unpaid purchase money. The resulting trust must arise, if at all, at the time of the execution of the conveyance.

3. Where a married woman takes up obligations of her husband given for the purchase of land, in his absence and without his request, a resulting trust will not arise in her favor.

4. CONSTRUCTIVE TRUST—*when it arises.* A constructive trust is one that arises when a person clothed with some fiduciary character, by fraud or otherwise, gains some advantage to himself. To sustain a presumptive trust the evidence must be very clear, and is always received with caution.

5. HUSBAND AND WIFE—*the latter furnishing money to the former—his liability to account.* Where a wife delivers to her husband a money obligation belonging to her, to be applied by him in a certain business transaction of his own, without any promise or agreement for a loan, or for repayment, and the actions and conduct of the parties fail to show any intention on the part of the wife to charge her husband, her heirs can not maintain a bill to require him to account for the amount so received by him. This is not like the case of the husband receiving money belonging to his wife, as her agent.

6. ALLEGATIONS AND PROOFS—*must correspond.* A complainant in chancery must recover, if at all, on the case made by his bill. He is not permitted to state one case in the bill, and make out a different one in proof.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.

Mr. OWEN P. THOMPSON, for the appellants:

Where a husband receives money belonging to his wife, a gift to him will not be presumed without clear evidence. *Tomlinson* v. *Matthews*, 98 Ill. 178; 2 Perry on Trusts, sec. 666.

By the well settled doctrines of equity, a constructive trust arises whenever one party has obtained money which does not equitably belong to him, and which he can not, in good conscience, withhold from another who is beneficially entitled to it. 2 Pomeroy's Eq. Jur. sec. 1047; 2 Perry on Trusts, (3d ed.) 192.

A person availing himself of a position of confidence to obtain an advantage will not be permitted to retain it. 1 Story's Eq. Jur. 333.

Whenever there is a relation which puts one person in the power of another, a fiduciary relation exists. See Evans on Agency, 256; Kerr on Fraud on Mistake, 182, 183.

Fraud, in the sense of a court of equity, includes properly all acts, omissions and concealments which involve a breach of legal or equitable duty, trust or confidence justly reposed and injurious to another, or by which an undue advantage is taken of another. Perry on Trusts, (3d ed.) sec. 169; 1 Story's Eq. Jur. sec. 187.

Messrs. BROWN & KIRBY, for the appellees:

A party is not allowed to state one case in his bill and make out a different one by the proof. The *allegata* and *probata* must agree, and the latter must support the former. *Boone* v. *Chiles*, 10 Pet. 177; *McKay* v. *Bissett*, 5 Gilm. 499; *Smith* v. *Brittenham*, 109 Ill. 540; 2 Daniell's Ch. Pr. 1000.

A resulting trust can not originate in payments made after the purchase. Such a trust must arise, if at all, at the time the purchase is made,—the funds must then be advanced and invested. *Olcott* v. *Bynum*, 17 Wall. 59; *White* v. *Carpenter*, 2 Paige, 238; *Bottsford* v. *Burr*, 2 Johns. Ch. 408.

The presumption of law is, that the notes on Williams were the gift of Susan F. Reed to her husband. 2 Story's Eq. Jur.

secs. 1202, 1203; 2 Pomeroy's Eq. Jur. sec. 1041; *Sidmouth* v. *Sidmouth,* 2 Beav. 447; *Lux* v. *Hoff,* 47 Ill. 425; *Maxwell* v. *Maxwell,* 109 id. 588.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is a bill filed in the Circuit Court of Morgan County on October 27, 1887, by the appellants, as heirs of their mother, Susan F. Reed, deceased, against the appellee, Andrew J. Reed, their father and the husband of said Susan F. Reed, and certain other parties, for the purpose of having a trust declared in favor of the complainants in certain lands alleged to have been purchased in part by their father with monies belonging to their mother, and for a conveyance of said lands to them, or for the payment to them by their father, the said Andrew J. Reed, of the monies so received by him, with the rents, profits and interest accrued thereon. Susan F. Reed died intestate on December 15, 1884, leaving four sons, three daughters, and two grandchildren the children of a deceased daughter, all of whom are parties hereto. Andrew J. Reed, the surviving husband of Susan F. Reed, married Mrs. Katie Fyffe on June 1, 1886; and, by way of marriage settlement, conveyed certain property to William J. Moore and Montreville Layman, as trustees, for the purpose of creating a jointure in favor of the said Katie in lieu of dower. The said Katie and her said trustees, and certain mortgagees and trustees holding incumbrances upon the property to secure money borrowed of them by Andrew J. Reed, are made defendants to the bill. After hearing had upon bill, answers, replications and proofs, the Circuit Court dismissed the bill for want of equity, and the Appellate Court has affirmed· such decree of dismissal. From this judgment of the Appellate Court the present appeal is prosecuted.

The bill alleges that Susan F. Reed received certain monies directly from the estate of her deceased father, Josiah Wil-

liams, and also certain monies from the sale of land devised to her by her father; that these monies were placed in the hands of her husband for safe-keeping for her and her heirs; that her husband, the said Andrew J., used said monies in purchasing lands and took the deeds in his own name; that it was understood between Susan F. and Andrew J., that said monies were to be held by the latter in trust for her, and, at her death, he was to account for and pay over the same to her children, and that since her death her children have called upon him, as such trustee, for a settlement, which he has refused to make.

The appellee, Andrew J. Reed, in his answer denies the existence of any such understanding, or that he received the monies in question upon any trust whatever. The answer also pleads the statute of frauds and the statute of limitations, and charges laches on the part of the complainants and their deceased mother; it also avers that the greater part of the lands was purchased with defendant's own money, and that any monies received by him from his deceased wife were "given by her to him as his sole and absolute property."

A complainant must recover on the case made by his bill. He is not permitted to state one case in the bill and make out a different one in proof. The allegations and proof must correspond. (*McKay* v. *Bissett et al.* 5 Gilman, 499.) In the present instance, the proof fails altogether to sustain the allegation of the bill that there was an understanding or agreement between the appellee, Andrew J. Reed, and his wife, upon the subject of holding her monies in trust or for safe-keeping, even if such an agreement were not invalid under the statute of frauds. He is the only witness who testifies in relation to this matter. He was put upon the stand by the complainants themselves, and, speaking as their witness, he denies the existence of any such understanding or agreement. But, if it were no objection to the case made by the evidence that it is variant from the case stated in the bill, we do not

think that the proofs disclose such a state of facts as entitles
the. complainants to the relief asked for.

The evidence shows that the executor of her father's estate
paid to Susan F. Reed $1016.13 in various sums during the
years 1865, 1866, 1867 and thereafter, but these sums went
into her hands, or were disposed of under her directions, and
were not received by her husband, or used by him. As to
these monies, she expended them independently of her hus-
band, and according to her own discretion either for the use
of herself or her family. The proof is clear upon this point,
and, therefore, appellee can be charged with no ·trust so far
as the sum of $1016.13 is concerned.

The next transaction has reference to the sum of $4870.51
received by Susan F. Reed from the executor of her father's
estate in October, 1865. In February, 1858, Andrew J. Reed
purchased 172.50 acres of land in Morgan County from one
Gallaher for $7777.00. The deed from Gallaher and wife to
Reed, dated February 18, 1858, recites the execution by Reed
of four notes for the purchase money, and reserves a vendor's
lien upon the premises for the payment thereof. The first
two notes were paid off by Reed with his own money. The
last two notes, one for $2464.00 and the other for $2596.00
were transferred by Gallaher to Josiah Williams in the latter's
life time, or, at any rate, they were among the assets belong-
ing to the estate after the death of Williams. On October 24,
1865, the executor of the Williams estate held these two notes
against Reed, and he also had in his hands the above sum of
$4870.51 to be paid to Mrs. Reed out of her father's estate.
Mrs. Reed on that day took up one of the notes amounting
with interest to $3024.33, and applied $1797.48 as a credit
upon the other note, $48.70 being retained by the executor
for a revenue tax. The balance of the second note was subse-
quently paid by the appellee, Reed. In other words, Mrs. Reed
authorized the executor to use the whole of her money to pay
off one of her husband's notes and to be applied as a credit

on the other note. She accepted the paid note and the credit so made upon the other note, as her part of the distributive share of her father's estate then paid out upon the order of the county court. Her husband was not present at this transaction, and she afterwards handed to him the paid note taken up by her.

It cannot be said that any resulting trust arose out of this transaction in favor of Susan F. Reed, because she did not furnish the consideration, or any aliquot part thereof, at the time when the purchase was made by her husband in 1858. A trust will not result to one who pays a part only of the purchase money of land conveyed to another, unless it be some definite part of the whole consideration, as one half, one third, or the like; and the trust can only arise from the original transaction at the time it takes place, and at no other time. The funds must be advanced and invested at the time the purchase is made. A resulting trust cannot be created by funds subsequently furnished. It is not possible to raise such a trust by the subsequent application of the money of a third person in satisfaction of the unpaid purchase money. "The resulting trust must arise, if at all, at the time of the execution of the conveyance." (*Alexander* v. *Tams*, 13 Ill. 221; *Perry* v. *McHenry*, 13 id. 227; *Olcott* v. *Bynum*, 17 Wall. 44; *White* v. *Carpenter*, 2 Paige, 217; *Botsford* v. *Burr*, 2 Johns. Ch. 405; *Wheeler et al.* v. *Kirkland*, 23 N. J. Eq. 13.)

The next and only other transaction relates to the sale of certain lands devised to Susan F. Reed by her father. By deed dated May 8, 1867, she and her husband conveyed these lands to her brother, Elias Williams, and she received from her brother, as proceeds of the sale, $7000.00, of which $1000.00 was paid in cash, and two notes were given to her payable to her order, one for $2000.00 due in ninety days, and one for $4000.00 due in five years from date, the latter secured by a vendor's lien expressly reserved in the deed. The evidence shows that, by deed dated August 1, 1867, one McMillan con-

veyed certain lands to the appellee, Reed, in consideration of a payment of $5000.00 therefor. It is claimed on the part of the appellants, that the proceeds of the sale to Elias Williams were used by Reed to purchase the McMillan land, and that said land became subject to a resulting trust in favor of Susan F. Reed.

The proof does not support the contention that Reed used any of his wife's money in the purchase of the McMillan tract. The cash payment of $1000.00, with the exception of $70.00 reserved for a succession tax, was handed over to Mrs. Reed and used by her and under her direction; none of it was received or used by her husband. In the fall of 1867 the note for $4000.00 was endorsed by Mrs. Reed to one Morrison, and given by her to her husband who turned it over to Morrison in part payment for some cattle which he was then buying from Morrison. Mrs. Reed knew at the time that the $4000.00 was used in buying cattle of Morrison, and not only made no objection to such application of it, but endorsed it for the purpose of having it so applied. The appellee swears that he paid McMillan $1800.00 of the purchase money in the note of one Woods to whom he had sold cattle, and, while he admits that his wife endorsed the note for $2000.00 and gave it to him, he says that he used it in his business as a farmer and applied no part of it to the purchase of land. There is no proof whatever that Susan F. Reed intended any of the proceeds of the sale to her brother to be used in the purchase of any particular tract of land, or of any land, or that she directed or instructed her husband to so apply any of said proceeds. He seems to have been a prosperous farmer and a buyer and seller of cattle, and made money in his business, so that he was able to buy property out of his own means. In his purchases of cattle he sometimes met with losses and sometimes made gains. It appears that the purchase from Morrison, upon which the note for $4000.00 was applied, turned out to be a losing speculation.

But appellants claim that the appellee Reed must be regarded as having acted as the agent or trustee of his wife, and that, having received her monies as such agent or trustee, he should be required to account for them, together with the interest and profits accrued thereon. In support of this contention reference is made to the cases of *Patten* v. *Patten,* 75 Ill. 446, and *Tomlinson* v. *Matthews,* 98 id. 178.

In the *Patten* case a bill was filed by a wife against her husband to compel him to account for and pay over monies that had come to his hands from her separate estate. It appeared from the evidence there, that the husband acted as the wife's agent and received the monies in question as her agent; that he promised to repay to her the monies received by him; that he made out "nearly monthly accounts for her," and, when she withdrew her business from him, he made out and presented to her a final account. They recognized the relation of principal and agent as existing between themselves—he, by his acts, and she, by bringing the suit against him. It would seem to have been the fact, also, in that case, that the income and proceeds, which came into the possession of the husband, were received by him from third persons, and not directly from the hands of his wife. Under such a state of facts it was held that his receipt of the income and proceeds of her separate estate, though with her consent, was in the character of agent; that the presumption did not arise of consent on her part to his appropriation of her funds as his own property, and that, if he claimed the same as a gift, the burden was upon him to establish his claim by evidence.

But, in the present case, there is nothing in the evidence, and there was nothing in the conduct of the parties, to indicate that either Mrs. Reed or her husband regarded the relation of principal and agent as existing between them. She never called upon him for an accounting although they lived together as husband and wife for nineteen years after the payments on the Gallaher notes, and for fourteen years after

the receipt of the notes made by Elias Williams. The funds belonging to her, which went into his hands, were not received by him from third persons, but went from third persons into her own hands, and were by her either applied for his benefit, or voluntarily turned over to him to be used in his business or for the support of his family. Under such a state of facts, the presumption arises of a gift by the wife to the husband. "If a husband receives the capital fund of his wife's separate property, there is no presumption that she intended to give or transfer it to him, * * * but if the husband uses the property in his business, or for the support of his family, with her knowledge and assent, a gift may be inferred in the absence of a contrary agreement." (2 Perry on Trusts, sec. 666.) (See also *Lux* v. *Hoff*, 47 Ill. 425; *Maxwell* v. *Maxwell*, 109 id. 588; *Temple* v. *Williams*, 4 Ired. Eq. 39; *Sidmouth* v. *Sidmouth*, 2 Beavan, 447; 2 Story's Eq. Jur. secs. 1202, 1203; 2 Pomeroy's Eq. Jur. sec. 1041.)

We said in the Patten case: "The relation of the parties may be considered with reference to the weight to be given, or inference drawn from, their conduct and dealings, with regard to her separate property." The conduct and dealings of the appellee with reference to the funds of his deceased wife, when considered in connection with the relation of husband and wife which existed between them, do not lead to the inference that he occupied the position of agent or trustee. If the burden rests upon appellee to prove that the money and notes received by him were gifts from his wife, he has established the fact of such gifts by evidence. He says that his wife's money, and his own money made by farming and dealing in cattle, were put into a common fund, and used in the business, in supporting the family, in paying debts and the expenses of living; that she never had an account; that she turned everything over to him to do as he pleased with it and to dispose of it as he pleased when he should die; that she gave him the Gallaher note after it was paid, and gave him

the Williams notes to use as he saw fit; that she never asked for any agreement, or accounting, or any interest in the land.

In the *Tomlinson* case, the main question was as to the validity of a conveyance made by the husband to the wife in payment of an indebtedness which he owed to her. It appeared there that the wife made a loan of her separate funds to her husband and took from him his notes as evidence of the indebtedness; the conveyance was upheld as having been made for the purpose of paying the notes. In the case at bar, there is no pretence that there was any loan of money to the appellee by his deceased wife, and consequently the *Tomlinson* case has no application.

The evidence to sustain a presumptive trust must be very clear, and is always received with caution. (*Mahoney* v. *Mahoney*, 65 Ill. 406.) A constructive trust is one that arises when a person clothed with some fiduciary character, by fraud or otherwise, gains some advantage to himself. (1 Perry on Trusts, sec. 27.) The evidence of the existence of a trust in this case is not clear. There is absolutely no proof that the appellee Andrew J. Reed gained, or attempted to gain, any advantage over his wife by fraud or otherwise.

We think that the decision of the Appellate Court was correct, and its judgment is accordingly affirmed.

*Judgment affirmed.*