JOHAN ONASCH

*v.*

AUGUSTE ZINKEL *et al.*

*Opinion filed December 22, 1904.*

TRUSTS—*when trust does not result to one who pays part of purchase money.* A trust will not result in favor of one who contributes a part of the purchase money for land conveyed to another, unless it be some definite amount or some aliquot part of the whole consideration.

APPEAL from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

This was a proceeding brought in the superior court of Cook county by Auguste Zinkel and Albertine Boldt, children of Albertine Onasch, deceased, to partition a certain lot in the city of Chicago, the legal title to which had been in said Albertine Onasch at the time of her death. She left her surviving Johan Onasch, her husband, Auguste Zinkel, Albertine Boldt and Adeline Weichman, her children, and Lillie Onasch, the daughter of Charles Onasch, a deceased son, as her only heirs-at-law. The bill averred that Johan Onasch is entitled to dower in the premises, and that the children and grandchild are each seized in fee simple, by inheritance from Albertine Onasch, of an undivided one-fourth part of the premises subject to said dower.

A cross-bill was filed by Johan Onasch, which, with the answer thereto and the replication to the answer, presented the issue, whether or not there was a resulting trust in the premises, for the benefit of Johan Onasch the legal title being held by Albertine Onasch, and this was the only contested question in the case. The master to whom the cause was referred to take the evidence and report his conclusions to the court, found that there was no resulting trust, but that Johan Onasch was entitled to an estate of homestead in the prem-

ises, and recommended that homestead and dower be set off to him, and that the prayer of the bill for a partition be granted. A decree was thereupon entered in accordance with the master's report. This appeal is prosecuted by Johan Onasch.

The controlling facts are as follows: Johan Onasch and family, prior to 1882, lived in Germany. During that year, Auguste and Albertine, daughters, and Charles, a son, left Germany and came to Chicago, where they obtained work. Auguste was then twenty years of age, Albertine twenty-two and Charles fifteen. In the spring of 1884, these children sent their parents the money necessary to pay the passage of the remainder of the family to Chicago. The parents and Adeline and August, children, arrived in that city during the month of April, 1884. Adeline was then thirteen years of age and August, who pre-deceased his mother, was ten years of age. The parents had no money or property whatever. The family rented a house and commenced housekeeping. The mother kept the purse and managed the affairs of the family, and the children and Johan Onasch turned over all the money earned by them to her. Albertine had $65 and Auguste $20 saved when their parents arrived in Chicago, and they turned those amounts over to their mother. Albertine the daughter lived with the family until October, 1884, when she was married to Carl Boldt. During this time she was earning from $5.50 to $6 per week. Auguste's wages amounted to from $3 to $5 a week until some time in 1887, when she was married to Albert Zinkel. During this period she did not take her meals with the family, but received her board in addition to the wages for her work.

Charles Onasch earned from $6 to $12 per week, until 1889, when he was married. He died in 1891, leaving a daughter, Lillie Onasch, who was a party defendant below. Adeline also commenced work in 1884 as a nurse girl and earned one dollar per week at first, but her wages gradually increased until she was earning seven dollars per week prior

to her marriage to William Weichman in 1891. There is evidence that August Onasch also earned money up to the time of his death, which occurred about 1891.

Johan Onasch, the appellant, had suffered the loss of one of his arms. He obtained employment in August or September following his arrival in Chicago, carrying newspapers, which is the only occupation he had up to the time of his wife's death. The evidence is conflicting as to the amount earned by him at this work. During the earlier years it was three to four dollars per week; later his wages were higher.

Each member of the family, including the father, turned his or her wages over to the mother each week. During the first year of their life in Chicago, Mrs. Onasch engaged in sewing for any who would employ her, and her earnings were added to those of the other members of the family.

On January 14, 1886, Albertine Onasch, the mother, purchased the lot in question for $650, and took title to herself paying $125 down and the balance in installments out of money saved from the sources above enumerated. About a month after purchasing the lot, a small frame cottage was purchased for $150 and moved upon the lot, the contract for the purchase being taken in the name of Johan Onasch, but the house being paid for out of the funds held by his wife. In 1889, a brick house was erected on the lot, the contract for the same being made in the name of Johan Onasch. Part of the money used in building this house was paid by Mrs. Onasch out of the savings from the wages of her husband and children which had been turned over to her, and the balance was borrowed and subsequently re-paid by her with money saved in the manner above mentioned and from rents received from the buildings on the lot. Taxes were paid from the fund held by her and the tax receipts were taken in her name.

Evidence was introduced tending to show that Albertine Onasch had made statements before her death to the effect that the property belonged to her husband. Other witnesses

testified that she said that the property had been paid for with money saved from the children's wages.

ALBERT W. MAY, for appellant.

AUGUST MARX, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Appellant by his answer admits that the title to the property was held by his wife at the time of her death, but avers that the property was in fact owned jointly by himself and wife. By his cross-bill he sets up an inconsistent claim, which is that the property was purchased and paid for with his funds and the title taken to the wife, wherefore a trust resulted by virtue of which he is the equitable owner of the whole of the property.

Onasch and wife came to this country in April, 1884. The deed for the property was made January 14, 1886. In the meantime the wife had been the custodian of the funds earned by the various members of the family, except that the daughter Albertine was married in October, 1884, and thereafter paid nothing to the family fund. This fund to which all contributed was used by the mother who incurred and paid the various household and family expenses, and out of these earnings the real estate was purchased by her with title to herself.

On the authority of *Skahen* v. *Irving,* 206 Ill. 597, appellant urges that the earnings of the minor children, contributed to the purchase, should be regarded as the property of the father. Whether that be true where, as here, the mother is virtually the head of the family and the wages of the minor children are paid directly to her with the father's knowledge and consent and without passing through his hands, it is unnecessary to now determine.

The fund resulted principally from the earnings of the daughters, Albertine, Auguste and Adeline, and the son,

Charles. Each of the two daughters, Albertine and Auguste, had reached her majority before the parents came from Germany. The son and the remaining daughter were minors until after the purchase of the property. Adeline in 1884 was but thirteen years of age and worked as a nurse girl at first for one dollar per week. It is manifest that she could have contributed but little to the fund. Appellant's earnings also went into the family purse, but the preponderance of the evidence shows that during the greater part of the time after his arrival and up to the date of the deed, he earned but three or four dollars per week, and never, up to that time, more than seven dollars per week. The evidence also shows that the wife, during her first year in Chicago, did sewing for persons not members of her family, and that her earnings were used in common with those of her husband and children.

If it be conceded that the money earned by the minors should be treated as the property of the father, there is still no basis upon which that earned by the mother and the two adult daughters could be so regarded. These two daughters came from Germany about eighteen months before their parents, and were in the employ of strangers and collected their own wages. No presumption that this money belonged to the father arises from the fact that they paid it to their mother, and while the daughter Albertine contributed to the family treasury for a period of only about six months after the parents came here, yet when the mother reached Chicago she received from this daughter $65 which the latter had accumulated from her wages prior to that time, and such sums as were paid out of her wages during the six months period were in addition to that amount.

It is impossible to determine by this record what amount or what proportion of the fund that went into the purchase of this property was earned by the minor children and by the father. The cross-bill charges that the property was paid for with funds belonging solely to appellant, and avers that he is therefore the owner of the entire property.

A trust will not result to one who pays or furnishes a part only of the purchase money of land conveyed to another unless it be some definite amount or some definite part of the whole consideration, as one-half, one-third, or the like. *Reed* v. *Reed,* 135 Ill. 482; *Stephenson* v. *McClintock,* 141 id. 604; *Pickler* v. *Pickler,* 180 id. 168; *Devine* v. *Devine,* 180 id. 447; *Cline* v. *Cline,* 204 id. 130.

Applying this rule to the record before us, it is manifest that the decree of the court below should not be disturbed, and it will accordingly be affirmed.

*Decree affirmed.*