MABEL ALVA WELLS *et al.* Appellees, *vs.* JOHN A. MES-
SENGER *et al.* Appellants.

*Opinion filed February 25, 1911.*

1. TRUSTS—*equity may, in a proper case, enforce trust against
property purchased with trust fund.* A court of equity, in a proper
case, will follow a trust fund and enforce the trust against any
property in the hands of the trustee, or in the hands of anyone
who, with notice of the trust, has taken the title to the property in
which the fund has been invested.

2. SAME—*evidence of existence of trust and investment of fund
in property must be strong.* To justify a court of equity in raising
a resulting trust the evidence must clearly and unequivocally show
that a trust existed and that the trust fund was used in the pur-
chase of the property sought to be impressed with the trust, in full
or for some distinct interest or aliquot part of the property.

3. SAME—*a resulting trust does not spring from the contract
of the parties.* A resulting trust is not created by contract but
by implication of law apart from the contract, and the trust must
arise, if at all, at the time of the execution of the conveyance and
when the legal title vested in the grantee.

4. SAME—*when a court of equity is not justified in declaring a
resulting trust.* A court of equity is not justified in declaring a
resulting trust in favor of two sons in property purchased by their
mother in her name with money borrowed on certain property
owned by her, which had previously been cleared of a mortgage
by using a fund to which the sons claim to have contributed, where
the evidence does not show what portion, if any, of the fund used
to satisfy the mortgage was furnished by the sons but leaves it
doubtful whether any of their contributions remained in the fund
at the time it was so used.

5. SAME—*when admissions of alleged trustee are entitled to but
little weight.* Admissions by a mother that she and her sons "were
all interested in the property" are entitled to but little weight as
establishing a resulting trust in favor of the sons, as there is a
distinction between an admission by a holder of title that a third
party's money paid for the land and an admission that a third
party is interested in it.

6. REGISTRATION OF TITLE—*trial court is invested with discre-
tion in taxing the examiner's fees as costs.* Under the provision
of the Torrens law that the court may, in proper cases, direct the
payment, in addition to the regular examiner's fees, of such fur-

ther fees by the applicant or any defendant as it may determine, the court is invested with a discretion in taxing such further fees as costs, even though they do not go to the examiner but to the county where the examination was had.

APPEAL from the Circuit Court of Cook county; the Hon. ADELOR J. PETIT, Judge, presiding.

HARRIS F. WILLIAMS, for appellants.

KREMER & GREENFIELD, for appellees.

Mr. JUSTICE HAND delivered the opinion of the court:

This was an application filed by Sarah E. Messenger in the circuit court of Cook county to have the title in fee, subject to certain encumbrances, to the south fifty feet of lot 7, in block 5, in Skinner & Judd's subdivision of the north-east quarter of section 21, township 38, north of range 13, east of the third principal meridian, in the said county, registered in her name under the provisions of an act entitled "An act concerning land titles." John A. Messenger and Harry N. Messenger, sons of Sarah E. Messenger, were stated to claim an interest in the said premises and were named as defendants, and they appeared and answered, and denied that Sarah E. Messenger was the owner of said premises in fee, and averred that while the title to said premises appeared of record to be in fee in said Sarah E. Messenger, they were each the equitable owner of the undivided one-third part of said premises, and asked that if the legal title in fee was registered as being in said Sarah E. Messenger, it be so registered subject to their equitable rights in said premises. The case was referred to Theodore Sheldon, an examiner of titles, before whom the parties appeared and submitted evidence. The examiner filed a report, in which he found that Sarah E. Messenger was the owner in fee of said premises, and that said John A.

Messenger and Harry N. Messenger, or either of them, had no interest in said premises, and recommended that the title in fee to said premises, subject to the encumbrances thereon, be registered in Sarah E. Messenger. The examiner having overruled objections to his report, which were renewed as exceptions in the circuit court, the circuit court entered a decree in accordance with the recommendations of the examiner, from which decree John A. Messenger and Harry N. Messenger prosecuted an appeal to this court, where the decree of the circuit court was reversed on the ground that the trial court erred in holding a certain abstract of title offered in evidence by Sarah E. Messenger was properly received in evidence by the examiner, and the cause was remanded to the circuit court for further proceedings in accordance with the views expressed in the opinion filed in that case. (*Messenger* v. *Messenger,* 223 Ill. 282.) Upon the cause being re-docketed it was referred to Charles T. Farson, examiner of titles, and further evidence was taken, and upon the stipulation of the parties the evidence taken before Mr. Sheldon was received and considered by Mr. Farson the same as though it had been taken before him as examiner. Thereupon Mr. Farson, as examiner, filed a report, in which he held that Sarah E. Messenger was the owner in fee of the said premises, subject to encumbrances thereon, and that John A. Messenger and Harry N. Messenger, or either of them, had no interest in said premises, and recommended that the title in fee to said premises, subject to the encumbrances thereon, be registered in Sarah E. Messenger. While the matter was pending, and on the third day of May, 1907, Sarah E. Messenger died testate, and by order of court her daughter, Mabel Alva Wells, and her executor, the Chicago Title and Trust Company, were substituted as parties in her stead, and a decree was entered in accordance with the recommendations of the examiner, from which decree John A. Messenger and Harry N. Messenger have prosecuted a second appeal to this court.

The contention of the appellants is based upon the claim that they each furnished one-third of the funds with which the premises in question were purchased and improved, and that, although the title was taken in the name of their mother, by reason of the fact that they furnished a part of the funds for the purchase and improvement of said premises their mother should be held, in equity, to hold one-third of said premises in trust for John A. Messenger and one-third of said premises in trust for Harry N. Messenger, subject to the encumbrances thereon,—in other words, that in consequence of their money having been used in the purchase and improvement of said premises the law has raised up a resulting trust in said premises in their favor. This contention involves, therefore, a consideration of the evidence found in this record.

Prior to the year 1890 Sarah E. Messenger, a widow, and her three minor children, John A., Harry N. and Mabel, were living in the city of Milwaukee, Wisconsin. John A. was studying dentistry and his expenses were being paid by his mother, neither of said children having any estate. In 1890 John A., having been admitted to practice his profession, removed to Chicago, and Harry N., having also studied dentistry, soon followed him, and .the two found employment with Dr. Ubellar, who had an office at Sixty-third street and Wentworth avenue, in the city of Chicago. In the spring of 1891 Mrs. Messenger visited her sons, and the sons soon thereafter purchased the business of Dr. Ubellar carried on at Sixty-third and Halsted streets and at Sixty-third street and Wentworth avenue, Mrs. Messenger furnishing the purchase money and to re-furnish and re-fit the offices. The parties differ as to the amount of money furnished by Mrs. Messenger at that time, but it could not have been less than $550 and may have amounted to $1000. In the fall of 1891 the business at Sixty-third and Wentworth avenue was given up, and Mrs. Messenger, the two sons and the daughter lived together at Sixty-third and Hal-

sted streets, in rooms in the rear of the office where John A. and Harry N. carried on the dental business. John A. and Harry N. testified that in the year 1892 they expressed dissatisfaction to their mother as to the amount of money they were saving out of their business, and stated to her so soon as the World's Fair was over they intended to leave the city. She urged them not to give up the business but to stay in Chicago, and suggested that they all save their money and buy a home, and this suggestion was agreed to by John A. and Harry N. and they remained in Chicago. At the time, neither John A. nor Harry N. had any money, but what money they received from their business thereafter, and the income of Mrs. Messenger, which was considerable, was kept in what is designated by John A. and Harry N. as the "common pocket-book" and all expenses were paid therefrom. The arrangement testified to by John A. and Harry N. is denied by their mother. At the time Mrs. Messenger came to Chicago she had a considerable amount of property in Milwaukee which she had inherited from her father. She had thus acquired one piece of property worth $750, another which she sold for $3000, and owned, jointly with her sister, a third, which was subject to a mortgage of $1750 and which produced $135 per month. She soon purchased the interest of her sister in the property which they owned jointly, for $5500, $5000 of which was secured by a mortgage on the property. Some time in 1894 or 1895 the mortgages on the Milwaukee property were paid off and released of record, and soon thereafter Mrs. Messenger purchased the property herein, known as the Stewart avenue property, for $8000 cash and paid for it from a loan of $10,000 secured upon her Milwaukee property. She then negotiated a loan for $18,000 upon the Stewart avenue property, the $18,000 note being signed by Sarah E., John A. and Harry N. Messenger, and erected an apartment building thereon costing from $20,000 to $25,000.

The theory of the appellants is, that the money with which the mortgages on their mother's property in Milwaukee were paid off was taken, by their consent, by their mother from the "common pocket-book;" that the joint fund which was thus used was impressed with a trust, and that when Mrs. Messenger afterwards made a loan upon the Milwaukee property and purchased the Stewart avenue property, a trust should be impressed upon the Stewart avenue property in their behalf in consequence of the common fund having been used to satisfy the mortgages upon the Milwaukee property.

It is undoubtedly the law that a court of equity in a proper case will follow a trust fund and enforce the trust against any property in the hands of the trustee, or in the hands of anyone who has taken the title to the property with notice of the trust, in which it has been invested. Before this will be done, however, and a resulting trust raised up, as is sought in this case, the evidence that a trust existed and that the trust fund was used in the purchase of the property sought to be impressed with the trust, in full or for some distinct interest or aliquot part of the estate, (*Reed* v. *Reed,* 135 Ill. 482; *Stephenson* v. *McClintock,* 141 id. 604; *VanBuskirk* v. *VanBuskirk,* 148 id. 9;) must be "clear, strong, unequivocal, unmistakable, and must establish the fact of the trust and the investment of the trust fund by the alleged beneficiary beyond a doubt." (2 Pomeroy's Eq. Jur. sec. 1140; *Green* v. *Dietrich,* 114 Ill. 636; *Heneke* v. *Floring,* 114 id. 554; *Mahoney* v. *Mahoney,* 65 id. 406.) The evidence in this case does not show clearly that any of the funds of John A. Messenger or Harry N. Messenger were used in the payment of the mortgages upon the Milwaukee property belonging to Mrs. Messenger. The most that the evidence does show is, that the gross earnings of John A. and Harry N. Messenger went into a common fund with the income of their mother while the family was living at Sixty-third and Halsted streets, and that the gross

earnings of the dental business for the years 1892, 1893, 1894 and 1895 aggregated the sum of $7500, which was less than $1000 per year, each, for John A. and Harry N. during those years; that while that money went into the "common pocket-book," it was used for paying office expenses, family expenses, etc., and that quite a considerable part thereof was lost by John A. and Harry N. in speculation upon the board of trade and other enterprises in which the two brothers were engaged during the time the common fund was being accumulated. During all that time the mother had a yearly income of more than $2000 and had realized upon property sold by her not less than $3750, and the encumbrances had been reduced to about $4900 at the time they were paid.

By reason of the indefinite character of the testimony we have encountered the same difficulty that confronted the examiner, and have been unable to determine with any degree of certainty the amount, if any, of the funds of John A. and Harry N. that was used in paying off the mortgages on the Milwaukee property. We think, therefore, it can not be said with any degree of certainty that any of the money of John A. and Harry N. was used for the purpose of satisfying said mortgages.

A resulting trust does not spring from the contract or agreement of the parties but from their acts. It is not created by contract, but by implication of law apart from contract, (*Stephenson* v. *Thompson,* 13 Ill. 186; *Bruce* v. *Roney,* 18 id. 67; *Lear* v. *Chouteau,* 23 id. 37; *Sheldon* v. *Harding,* 44 id. 68; *Donlin* v. *Bradley,* 119 id. 412;) and the trust must arise, if at all, at the time of the execution of the conveyance and when the legal title vests in the grantee. (1 Perry on Trusts, sec. 133; *Reed* v. *Reed, supra; Stephenson* v. *McClintock, supra.*) There is no evidence in this record that shows, or tends to show, that any of the funds of John A. and Harry N., or either of them, were invested in the Stewart avenue property or in its improve-

ment. The most the evidence tends to show is, that while the mother, brothers and sister lived at Sixty-third and Halsted streets their income and earnings were commingled, and the only way said fund is connected with the Stewart avenue property is, that the understanding was the fund so commingled was to be used to purchase a home. What proportion each contributed to the fund or how much was withdrawn by each is not shown. Finally it was agreed that the fund should be used to pay and satisfy the mortgages upon the Milwaukee property, and afterwards a fund was raised upon the Milwaukee property by mortgage, with which the Stewart avenue property was purchased. The evidence shows the Stewart avenue property was purchased with the funds of Mrs. Messenger, and not, in whole or in part, with the funds of John A. or Harry N. The most that can be said to the contrary is, that an inference can possibly be drawn that some portion of the earnings of John A. and Harry N. was used, with their consent, to pay off the mortgages upon the Milwaukee property, but what amount of their funds, if any, was so used the evidence does not show.

There was also some testimony introduced with a view to establish that Mrs. Messenger had admitted, on different occasions, that John A. and Harry N. were part owners of the Stewart avenue property. Those admissions were not to the effect that their money had, in part, paid for the Stewart avenue property, but that "they were all interested in the property." Mrs. Messenger denied making such admissions, and this court has drawn a distinction between the admissions of a party that a third party's money paid for the property, and statements that a third party was interested in or the owner of property which stood in the name of the party making the admission. In *VanBuskirk* v. *VanBuskirk, supra,* at page 20, it was said: "There is a clear distinction between proof of the declarations of the grantee to the effect that he holds the title for another or

has agreed to convey to another, and his declarations or admissions to the effect that another person's money was paid for the land. Declarations of the latter class are entitled to more weight than those of the former class, especially when they are corroborated by circumstances and attended by proof of some previous arrangement under which the money was advanced." We think the claimed admissions of Mrs. Messenger were entitled to but little weight. In *Reeve* v. *Strawn,* 14 Ill. 94, on page 100, it was said: "Before we transfer the title to real estate upon the strength of parol testimony alone, the facts upon which such change is asked should be so convincing as to leave no reasonable doubt in the mind of the court, and not, as in this case, consist of ambiguous expressions and uncertain declarations made by the party sought to be charged and testified to by witnesses after the lapse of several years." And in *Corder* v. *Corder,* 124 Ill. 229, on page 233: "There is the evidence of some ten or twelve witnesses in the record, to the effect that William R. Corder stated that Joseph owned the land. These declarations are, in the main, denied by appellee. But aside from this, such evidence, where the title to real estate is involved, ought to be received with great caution. As held in *Bragg* v. *Geddes,* 93 Ill. 39, such evidence is subject to much imperfection and frequently is entitled to but little weight."

It is our conclusion that the examiner correctly held that Sarah E. Messenger was the owner of the premises in fee, and that the circuit court did not err in decreeing that the title to said premises be registered in her in fee, subject to the encumbrances thereon.

It appears from the evidence that in the first decree the court taxed as costs an examiner's fee of $100 for the examination made by examiner Sheldon and an examiner's fee of $100 for the examination made by examiner Farson, and error is assigned upon this branch of the decree. Section 108 of the act hereinbefore referred to, in part, is as

follows: "The fees to be paid to the registrar shall be as follows: * * * In proper cases the court may direct the payment of such further fees by the applicant or any defendant as it may determine." The record contains over 710 pages and the case was considered by two examiners. The first report was set aside on the ground that an abstract of title was improperly admitted in evidence and that Mrs. Messenger had not established title in herself, and on the remandment of the case appellants conceded Mrs. Messenger had the legal title and therefore proof of her title was unnecessary, and stipulated the testimony taken before examiner Sheldon should be used before examiner Farson and considered by him, and upon further evidence being taken before examiner Farson a new report was submitted by him covering the entire case. The trial court was authorized by the statute to direct the payment of such further fees by the applicant or any defendant as it might determine. The fees thus taxed do not go to the examiner but to the county in which the examination was had. The court was invested with a discretion in allowing the examiners' fees taxed in the case, and we are unable to say such discretion has been abused. In *Leigh* v. *National Hollow Brake-Beam Co.* 224 Ill. 76, on page 83, this court said: "Appellants further strenuously insist that the finding of the trial court that the costs in this proceeding should be charged to Leigh is erroneous. In chancery suits the question of costs rests largely in the discretion of the trial judge. While this is a judicial discretion, reviewable by the courts of appellate jurisdiction if it is abused, ordinarily the conclusions of the trial judge are accepted as final."

From a careful examination of this record we are of the opinion the decree of the circuit court should be affirmed, which will accordingly be done.

*Decree affirmed.*