WILLIAM R. BRISCOE, Appellee, *vs.* RUSSELL PRICE *et al.* Appellants.

*Opinion filed October 24, 1916.*

1. TRUSTS—*when trust will not result to one who pays a part, only, of purchase money.* A trust will not result to one who pays a part, only, of the purchase money for land conveyed to another unless it be some definite part of the whole consideration.

2. SAME—*resulting trust must arise, if at all, when deed is executed.* A resulting trust must arise, if at all, at the time the conveyance is executed, and it cannot be created by the subsequent advancing of funds, as a loan, to make the deferred payments.

3. SAME—*a trust not established if the evidence is capable of other reasonable interpretation.* If the evidence in a suit to establish a resulting trust is capable of reasonable interpretation upon theories other than the existence of a resulting trust the trust is not established.

4. SAME—*when resulting trust is not established.* Where the evidence shows the making of a bond for deed to a woman and the subsequent execution of a deed to her, a resulting trust in favor of two of her sons, who were minors at the time, is not established by the fact that they practically supported the family and gave most of their earnings to their mother during the time the land was being paid for.

5. PARENT AND CHILD—*when mother is entitled to earnings of minor children.* Where the father has abandoned his family, his right to the earnings of the minor children is lost and the mother is entitled to such earnings because of her natural obligation to support and maintain the children.

APPEAL from the Circuit Court of Christian county; the Hon. THOMAS M. JETT, Judge, presiding.

JOHN E. HOGAN, for appellants.

J. A. MERRY, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Appellee, by his legal guardian, Aud Walters, filed his bill for partition in the circuit court of Christian county against Russell Price, Verna Price, Edna Hall, Frank M. Price, Dennis K. Price and Daisy Brown. The bill charged that Mary C. Price died intestate on October 22, 1890, owning lots 7 and 8, in block 9, in the original town of Taylorville; that she left surviving her Benjamin Price, Russell Price, Frank M. Price and Dennis K. Price, her sons, and Alice Briscoe, Edna Hall and Daisy Brown, her daughters, as her only heirs-at-law; that Benjamin Price and his wife afterwards died, leaving Verna Price their only heir-at-law; that Alice Briscoe and her husband have since died, leaving appellee as their only son and heir-at-law, and that appellee and the said defendants were each the owners of an undivided one-seventh in fee of said premises as tenants in common. The defendants to the bill, except Daisy Brown, filed their joint and several answers, admitting the death of Mary C. Price and the heirship as above set forth but denying that she owned the premises described in the bill, and averring that said premises were purchased by the defendant Russell Price and his brother Benjamin Price, and that the entire purchase price of the same was paid by them in equal parts; that their mother paid none of the consideration for said premises, but that at the time of said purchase Russell and Benjamin Price were minors and that the property was taken in the name of their mother, Mary C. Price; that thereby a resulting trust was created in favor of the said Benjamin Price and

Russell Price, and that by virtue thereof, and by the death of Benjamin Price, his daughter, Verna Price, and Russell Price, became and are the owners in fee simple of said premises, in equal parts, as tenants in common. It is also averred in the answer that since the beginning of this suit the defendants Edna Hall and husband, and Frank M. Price and Dennis K. Price, have conveyed all their right and title in said premises to Russell Price and Verna Price for the purpose of placing the title in the proper owners. Russell Price and Verna Price also filed their cross-bill, alleging the same facts averred in their answer as creating a resulting trust and ownership in them of said premises, and praying that a resulting trust be declared accordingly and that partition be made between them of said premises. The original bill was ordered to stand as an answer to the cross-bill. The court dismissed the cross-bill for want of equity, and found and decreed that William R. Briscoe and Daisy Brown are each entitled to a two-fourteenths part in fee simple of said premises and that Verna Price and Russell Price are each entitled to a five-fourteenths part thereof in fee simple and that partition thereof be made accordingly, the said Daisy Brown having made default to both the original bill and cross-bill. Verna Price and Russell Price have perfected their appeal to this court.

The evidence in the record shows that Mary C. Price obtained legal title to said premises by virtue of a warranty deed made by William T. Vandeveer to her on the 13th day of May, 1890. It further shows that she received a bond for deed to said premises September 5, 1887, from John T. Buckley, reciting, in substance, that for the sum of $900, payable as follows: $175 cash, the remainder in six notes dated September 5, 1887, one for $25 due in thirty days, one for $75 due in five months, one for $90 due in eleven months, one for $90 due in seventeen months, one for $125 due in twenty-three months and one for $320 due in twenty-three months from date, the obligor, John T. Buck-

ley, would convey to her said premises in fee simple if she paid said sums in said notes mentioned according to the terms thereof. The said bond contained thereon the following indorsement: "The money paid on this is the money of Isaiah Price.—J. G. D." The indorsement was made by John G. Drennan, an attorney at law then living at Taylorville and now a resident of Chicago, who was representing Buckley. From his testimony it appears that Buckley, Dick Bourne, Mary C. Price and one of the Price boys (Ben Price) were present when the bond for deed was made, and that at that time Mrs. Price did not have the cash payment and the bond remained with him until the same could be paid; that the $175 was afterwards brought to him by Ben (also known as Isaiah) Price, and that in accordance with a custom of his he noted the name of the boy who paid the money but that he is not certain who made the payments on the bond. Drennan's testimony is the only evidence as to what transpired at the making and the delivery of said bond and concerning the first payment. Russell Price, so far as the evidence shows, had nothing to do with any part of the transaction and paid no part of the $175. There is no evidence in the record showing that Ben Price and Russell Price ever bought the premises or jointly made the first payment or any other payment, except the testimony of Edna Hall set forth in the following question and answer: "What did they [Ben and Russell Price] do with their wages?"—"Well, they maintained the family with some of it and they bought this place, and they gave mother the money to make the payments on the place." She did not testify or show by her testimony that she had any opportunity to know who really purchased this property. She states no facts concerning the purchase thereof,—only her conclusions as above given. She also testified that Ben and Russell were cigar makers, and that they maintained the family with their wages and paid their

wages to their mother to support the family and to make payments on the said lots.

The evidence in the record clearly shows that Ben and Russell were very industrious boys and saved all their earnings that they could and paid them to their mother in support of the family, consisting of their mother and said children; that they all lived together on said property during the time it was being paid for, excepting Russell, who worked in Kansas at his trade as cigar maker about two years just previous to his mother's death but that his home was really at his mother's while he worked in Kansas; that he and the minor children lived on the premises for a number of years after the mother's death, and that Russell collected whatever rents were paid for the premises after Ben's death. Ben and Russell were both minors until the death of their mother, and there is no satisfactory evidence in the record tending to show that she ever emancipated either one of them, or that they paid to her their wages upon any other theory than their obligation as minor children to a parent. There is no evidence that their father ever emancipated them or made any claim upon them or upon the family or that he supported the family, but it does appear that he had abandoned his wife and children before the purchase of said lots and was paying no attention to them. Mrs. Price, the mother, had no source of income except from her children, and Ben and Russell furnished about all the money, if not all, that supported the family after the purchase of the said premises and up to the death of their mother, while the girls and the other boys helped to do work for her about the house.

A resulting trust must arise, if at all, at the time of the execution of the conveyance. A trust will not result to one who pays a part, only, of the purchase money of land conveyed to another unless it be some definite part of the whole consideration, as one-half, one-third, or the like, and the trust can only arise from the original transaction at the

time it takes place and at no other time. The funds must be advanced and invested at the time the purchase is made. A resulting trust cannot be created by funds subsequently furnished. It is not possible to raise such a trust by the subsequent application of the money of a third person in satisfaction of the unpaid purchase money. (*Reed* v. *Reed*, 135 Ill. 482; *Dick* v. *Dick*, 172 id. 578.) After the appellee showed the legal title to be in the mother, the burden of proof was cast upon appellants to prove, clearly, strongly, unequivocally and unmistakably, the fact that their money was used to pay for the property in question and under such circumstances that equity would raise a resulting trust in their favor, and the proof of such facts must be beyond a doubt. (*Strong* v. *Messinger*, 148 Ill. 431; *Pickler* v. *Pickler*, 180 id. 168.) The evidence does not satisfactorily connect Russell Price with the purchase of said premises in any way, and does not even satisfactorily show that any part of his money or earnings composed any part of the $175 cash payment. The best that the evidence shows in favor of the appellants is that Ben and Russell paid their earnings to their mother in support of her and the family and to make payments on said premises.

If the evidence is capable of reasonable explanation upon theories other than the existence of a resulting trust the trust is not established. (*Goelz* v. *Goelz*, 157 Ill. 33.) Mary C. Price was entitled to the earnings of Ben Price and Russell Price, her minor children, because of her natural obligation to provide for the maintenance of them. When her husband abandoned her and her family he lost all claim to their labor and their earnings, and his wife was entitled not only to her own earnings, but also to the earnings of her minor children. (*Hazelbaker* v. *Goodfellow*, 64 Ill. 238.) The natural conclusion from the evidence in the record is, that Ben and Russell Price and their mother considered that they were in duty bound, as minor children, to support their mother and to pay their earn-

ings to her for that purpose, and that they very dutifully paid the money to her for that purpose and very effectually raised the funds necessary to support their mother and her children, and, perhaps, to make all the money payments that were made on the purchase of said premises. If such payments were intended by them as gifts or loans to the mother for the purchase of the property in question a resulting trust was not established in this case. (*Reminger* v. *Joblonski,* 271 Ill. 71.) The evidence tends as much, or more, to support the theory of gifts or loans than to support the theory of a resulting trust.

The foregoing conclusion is further sustained by the evidence of William T. Vandeveer, who testified that on May 4, 1889, Mary C. Price borrowed of him $375 and gave her note for that amount, which he paid to her in a check; that thereupon John T. Buckley deeded to Vandeveer the lots in question to secure said loan; that afterwards Mary C. Price paid off said note and interest by the following payments: August 1, 1889, $150, November 9, 1889, $100, and February 6, 1890, $141; that afterwards, on May 13, 1890, he made said deed to Mary C. Price by direction of Buckley. The evidence does not show what Mary C. Price did with the $375 which she borrowed from Vandeveer, but it is probable that she paid it to Buckley, or the balance thereof that she owed him for purchase money. The evidence does show clearly that the transactions were with Mary C. Price as the purchaser of said property, without any sufficient evidence to charge her as a trustee thereof for Ben and Russell Price.

There are no reversible errors shown in the record, and the decree of the circuit court is affirmed.

*Decree affirmed.*