(No. 30321.

RICHARD HILLE, Appellant, *vs.* DORIS MAY BARNES, Appellee.

*Opinion filed January 22, 1948—Rehearing denied March 15, 1948.*

HOMER D. DINES, of Chicago, and HADLEY & LEREN, of Wheaton, for appellant.

PERRY & ELLIOTT, of Wheaton, for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

This is a suit in equity brought by appellant, Richard Hille, against Doris May Barnes, to establish a resulting trust in an undivided interest in a lot in Du Page County. He also prays for partition and a charge upon the property of the cost of certain permanent improvements which he claims have augmented its value. The complaint charges that on October 16, 1933, the plaintiff and defendant purchased the real estate for $495, by the payment of $25 down, and installments of $5 per month until paid, with interest on deferred payments at the rate of six per cent per annum and taxes; and that title was taken in the name of the defendant under her former name of Doris May Lyford. Plaintiff alleges he paid four fifths of the purchase price, together with interest, and at his own expense

made costly improvements; that for approximately three years after the purchase of the property and the building of a small house thereon, the plaintiff and the defendant with her two children resided therein, but during the year 1937 the defendant moved to California, and plaintiff has occupied the premises since that time. He also alleges he is occupying the premises without paying compensation to the defendant, and further that there is no relationship by blood or affinity between the plaintiff and the defendant.

The answer denies the property involved was purchased by the plaintiff, but it is claimed the entire consideration was paid by the defendant alone, and that plaintiff had no interest at the time of its purchase or at any subsequent time, and alleges if any buildings were constructed upon the real estate it was done without the knowledge or consent of the defendant, and with full knowledge that she was the owner of the property.

The cause was referred to a master in chancery, who took the evidence and recommended that the complaint should be dismissed for want of equity. Upon exceptions being overruled the circuit court entered a decree approving the master's report in all respects, and dismissed the case for want of equity. Since a freehold is involved, the case comes to this court by direct appeal.

The evidence shows that the plaintiff and defendant at the time the contract for purchase was made, and for some time prior thereto, together with the two children of the defendant, were living with the plaintiff in a house owned by him in Chicago. In the early part of the fall of 1933, in answer to an advertisement, the plaintiff and the defendant together with her sister, drove by automobile to look at the property, and, after an inspection of the lots offered for sale, a written contract was entered into between the owner of the lot here in question and Mrs. Doris May Barnes, under her former name of Lyford, on the installment plan above noted.

The facts disclose that at the time of the purchase the down payment was about $25, but that Mrs. Barnes did not have that amount with her, and did not save enough until some weeks later to make the down payment and receive the written contract. Hille claims he made the down payment, but certainly he did not make it on the date when the negotiations took place. From the date of the contract with Mrs. Barnes payments were endorsed thereon to the extent of the first 38 months, amounting to $190, with $72.11 added as interest. This brought the payments down to January, 1937. For the payments after that time the defendant offered in evidence receipts in the amount of $255 on principal and $52.46 as interest, making a total of $445 on principal. The receipts were all made out to the defendant, the last receipt acknowledging payment in full and requesting her to send in the contract to receive her deed. On the other hand, the plaintiff introduced receipts showing the payment of $46.40, and this is the only amount conclusively shown to have been paid upon the contract by him.

In the complaint the appellant makes demand for four fifths of the property, claiming that he paid four fifths of the consideration, but in his argument says he is surprised that the defendant denied all of these payments, and that he has proved $135 in payments towards the consideration, which he asserts would give him a three-elevenths aliquot interest in the property.

At the time the contract was signed Mrs. Barnes was receiving $40 per month support money from her husband for the benefit of her two small children. After the removal into the shack built upon the premises she says she was paid $10 per week for board by Hille. Plaintiff does not deny paying the money, but says he did not pay a fixed sum per week; that he simply supported the family. When she left for California in 1937 she testifies Hille was to pay her $20 per month rent for the premises. He

denies the rent agreement entirely, but does admit he sent her $240 or $250. The contract was forfeited for nonpayment of installments in 1940 or 1941, and Mrs. Barnes paid up the delinquent installments. He says he did not try to pay it up.

In addition to the foregoing, Hille wrote Mrs. Barnes several letters, in one of which he offers her $400 cash for the property, or $500 at the rate of $5 per week, but claims to her that it would not make any difference because he had placed a $750 mechanics' lien upon the premises. Later on in the year, by letter, he offers her $500, and also says he has a mechanics' lien on the property by which he can protect himself, and that he can get title through his lawyer for $350, and finally, in a third letter, he writes that if she will come to Chicago he will either buy her out or she can satisfy the lien he has upon the premises. In his testimony, under oath, he denies that he ever placed a mechanics' lien upon the premises. Winding up his cross-examination appellant says: "I don't know what I did pay on the lot. I probably paid it all. I do not know what Mrs. Barnes paid on the lot, but it was very little."

These specific items are referred to because of the claim of appellant's counsel that Hille has established an aliquot or definite portion of the consideration to the amount of $135. Mrs. Barnes paid all of the interest and all of the taxes. Based upon these facts appellant contends that a resulting trust in the property was created by the payment of $135 out of a total of $495, or approximately a three-elevenths interest. During the period of payments some improvements were placed upon the premises. The first improvements were made out of lumber obtained from an abandoned or worn out freight car, but there is some doubt as to whether he procured this lumber, or whether it was obtained by the brother-in-law of Mrs. Barnes. At any rate, it appears that during a period of ten years or more

some sort of improvement has been placed upon the premises, and appellant prays to have the lot divided, and charge the appellee with the value of the improvements he has placed upon it.

The law is well settled that the plaintiff must establish the facts sufficient to raise a resulting trust by clear, convincing, strong and unequivocal evidence; (*Curielli* v. *Curielli,* 383 Ill. 102; *Holmstedt* v. *Holmstedt,* 383 Ill. 290; *Heineman* v. *Hermann,* 385 Ill. 191;) and if the transaction is capable of a reasonable explanation upon any other theory than that of a resulting trust it will not be sufficiently established to entitle the plaintiff to a decree placing the property in his name. (*Briscoe* v. *Price,* 275 Ill. 63; *Parker* v. *Ruley,* 317 Ill. 441; *Brooks* v. *Gretz,* 323 Ill. 161.) The evidence in this case leaves a great deal of doubt as to whether the appellant had anything whatever to do with the purchase of the property on contract, except to take Mrs. Barnes out in his automobile to look at the property advertised. He was not in good financial circumstances himself; he had deficiency judgments against him and domestic trouble with his wife as well. The arrangements while he and the defendant were living together were that she was paid money from time to time for living expenses, so, if she saved the money from what was allowed or paid her for board and laundry, it was her money, and, as to the other moneys paid, they are just as susceptible to the construction that they were gifts as that they were payments on the purchase price. If it was in the form of a loan after the contract had been signed, it does not come within the rule of advancing purchase money. *Reminger* v. *Joblonski,* 271 Ill. 71; *Briscoe* v. *Price,* 275 Ill. 63, and note in 60 A.L.R. 1240.

But, assuming that plaintiff established that he turned over to Mrs. Barnes $135, he has not shown a definite or aliquot part of the consideration. He assumes the consideration was $495, whereas, as a matter of fact, it was

$495 plus six per cent interest on the unpaid principal, and the payment of taxes and special assessments. It does not appear whether there were special assessments levied upon the property, but all of the receipts given to Mrs. Barnes disclose she paid in excess of $100 interest, and more than $50 taxes, and certainly the sum claimed to have been paid in is not an aliquot part of the total amount actually paid to obtain a deed for the lot. This is necessary if he is to claim a *pro tanto* part of the property. (*Hinshaw* v. *Russell,* 280 Ill. 235; *Ovasch* v. *Zinkel,* 213 Ill. 119.) It has also been held that moneys paid after the passing of title do not have the effect of creating a resulting trust. *Hummel* v. *Villmow,* 347 Ill. 58; *Kinsch* v. *Kinsch,* 348 Ill. 446.

In this case, of course, the actual fee title did not pass until 1941. Prior to that time the contract had been forfeited for nonpayment of installments. The contract for a deed was signed in 1933. In the case of *Briscoe* v. *Price,* 275 Ill. 63, the case involved a bond for a deed, in which a woman paid the first down payment, and members of her family (her two sons) worked and contributed their money derived from time and labor towards the support of the family and claimed a resulting trust because their earnings had gone into the property. The resulting trust was denied in that case because, as the court said, the most that the evidence showed was that the appellants paid their earnings to their mother in support of her and her family and to make payments on the premises. That exactly fits the situation in the instant case. The parties to this lawsuit were living together as a family, and had been for many years; one of them being already divorced from her husband and the other having domestic trouble with his wife. The money paid was for family purposes, and comes squarely within this rule, so that no sum can be allocated specifically to the contract so as to create a re-

sulting trust, even though there may have been some sort of an agreement between the parties.

As stated in the *Briscoe case,* the evidence stands as much or more to support the theory of gifts or allowance as it does the theory of the resulting trust. These facts, taken with his claim of a mechanics' lien which imports a debt from the owner, his offer to purchase the property from Mrs. Barnes, and his disregard of the forfeiture, all indicate he never had any interest in the property.

There is yet another reason why relief should not be granted in this case. The relationship of the parties is such that not only should the court leave them where they are, but the further fact appears that among the reasons plaintiff desired the contract made in the name of Mrs. Barnes was the difficulty with his own wife and the several deficiency judgments against him.

Some question has been raised as to the improvement placed upon the premises and the doctrine of innocently enhancing the value of the property of another. This principle is not applicable unless there is an honest and mistaken belief of the ownership of the property upon which the improvements have been placed. It has no application to a situation such as is shown here, where there is not only doubt as to whether plaintiff actually advanced the purchase price as trustee for himself, but also whether, if it was so advanced, it was for a purpose not countenanced in equity.

The decree of the circuit court of Du Page County is affirmed.

*Decree affirmed.*