(No. 12447.—Decree affirmed.)

LOUISA KATZING, Appellee, *vs.* CARRIE WIEGAND,
Appellant.

*Opinion filed February 20, 1919.*

1. TRUSTS—*what is necessary to establish a resulting trust.* To
establish a resulting trust it must be shown that the money of one
person has been invested in land and the title taken in the name
of another.

2. SAME—*a resulting trust arises by operation of law.* A re-
sulting trust arises by operation of law and does not arise from or
depend upon any agreement between the parties.

3. SAME—*evidence of a resulting trust must be clear and un-
equivocal.* To establish a resulting trust the evidence must be clear,
strong and unequivocal and must clearly establish the fact of pay-
ment by the alleged beneficiary.

4. SAME—*resulting trust must arise at moment of transaction.*
A resulting trust will not arise unless it be at the moment of the
transaction, as such trust must arise with the passing of the title,
and where divers persons contribute to the purchase price of prop-
erty it must appear that the sums contributed were for some dis-
tinct and definite interest in the estate.

APPEAL from the Circuit Court of Peoria county; the
Hon. JOHN M. NIEHAUS, Judge, presiding.

MCROBERTS & MORGAN, for appellant.

JACK, IRWIN & JACK, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an appeal from a decree entered by the circuit
court of Peoria county whereby certain lands described in
the bill of complaint and in the decree and appearing of
record in the name of George L. Katzing, deceased, are
adjudged to be owned by his sister, Louisa Katzing, com-
plainant, and by said decree a resulting trust was declared
to exist in favor of the complainant in all of said lands
so appearing of record in the name of George L. Katzing.

The bill alleges that the complainant established a confectionery business in the city of Peoria in 1892 with her own capital and was sole proprietor of said business; that her brother, George L. Katzing, was an employee of hers, working for $10 per week; that with the earnings derived from said business the complainant purchased the real estate in question as well as other lands; that such transactions were conducted for her by her brother, and the conveyances, until some six years prior to the filing of her bill, were taken in the name of the complainant; that during the six years prior to the filing of the bill the conveyances were taken in the name of her brother; that the purchase price in each case was paid by the complainant from the proceeds of her business, of which she was the sole proprietor; that the conveyances, except that for lot 29, block 12, Boulevard addition, which was taken jointly, were taken in the name of her brother as a matter of convenience; that her brother died on April 4, 1915, leaving certain heirs, one of whom is the appellant, Carrie Wiegand; that the Dime Savings and Trust Company is the duly appointed and qualified administrator of the estate of George L. Katzing. The prayer of the bill is in the usual form to establish a resulting trust. The answer denies all the material allegations in the bill. The master found for the complainant, and the circuit court overruled exceptions to the master's report and entered a decree declaring a resulting trust in the real estate described in the bill. The principal contention of appellant is that the evidence does not sustain the decree of the circuit court declaring a resulting trust.

In order to establish a resulting trust it must be shown that the money of one person has been invested in land and the conveyance taken in the name of another. It is immaterial whether the purchase was made and the money paid by the trustee or the *cestui que trust.* If the fact exists that it was done, the trust results, by operation of law, in favor of the party whose funds were used to purchase

the land, either to the whole or his equivalent portion of the land. Such trust does not arise from or depend upon any agreement between the parties. (*Bruce* v. *Roney,* 18 Ill. 67; *Froemke* v. *Marks,* 259 id. 146; *Brennaman* v. *Schell,* 212 id. 356.) A resulting trust must usually be established by parol evidence. Such evidence must be clear, strong, unequivocal and unmistakable and must clearly establish the fact of the payment by the beneficiary. (Pomeroy's Eq. Jur. sec. 1040; *Devine* v. *Devine,* 180 Ill. 447; *Strong* v. *Messinger,* 148 id. 431.) A resulting trust will not arise unless it be at the moment of the transaction, as such trust must arise with the passing of the title. So where divers persons contribute to the purchase price of property it must appear that the sums contributed were for some distinct and definite interest in the estate. (*Reed* v. *Reed,* 135 Ill. 482; *Strong* v. *Messinger, supra.*) Bearing in mind these rules relating to resulting trusts, none of which appear to be controverted by the parties herein, we come to an examination of the testimony.

The complainant offered before the master the testimony of four witnesses who were on more or less intimate terms with George L. Katzing and the complainant. Elwood Berte, a candy maker and an acquaintance of Louisa and George Katzing since 1893, testified that he had been employed by Louisa since 1893; that his first work was to wait on tables and do general light work after school; that five or six years later he did the ice cream work and assisted in the candy store; that he performed such services for Louisa up until the death of George; that Louisa was engaged in the confectionery business at 422 Main street, in the Bush building, in the city of Peoria, and thereafter moved to 426 Main street, at which place she has been for about nineteen years; that the building in which the business was conducted is owned by the Harriet Spurck estate; that George, her deceased brother, assisted in making candy and ice cream; that he was the manager

and took care of the managing department and paid the bills from the proceeds of the store; that the money from the business was kept during the day in the cash drawer, and in the evening her said brother would carry it in his pocket or hide it in the store; that he at times deposited it in a bank; that a book for small credit business and orders for ice cream was kept; that there was no account kept between the complainant and her said brother; that the goods were purchased in the name of the complainant and were paid for out of receipts from the store by her said brother, as manager; that the lots at Prospect Heights were purchased on the installment plan, which installments were paid to the Dime Savings Bank from store receipts by the said brother; that this money was sometimes taken from the cash drawer in the store and at other times from the receipts of the store which he carried; that when all the payments were made a deed was delivered; that a residence was constructed on lot 29, block 12, Boulevard addition, where they used to run a small business, and three stores were constructed at the corner of Prospect and Seiberling avenues; that these buildings were not paid for all at once but the money paid for them came from the profits of the store; that her said brother in his lifetime told witness that he was working in the store for wages, at $10 per week, and that it was the complainant's place; that up until the time of the death of her said brother the two of them made their home together.

W. J. Apler, city salesman for John C. Streibich & Co., testified that said company opened an account with Louisa Katzing some twenty years ago and that no change in the character of their business relations had been made since; that when said account was opened George Katzing told witness that he (George) was broke and didn't have a dollar.

Sam B. Serkowich testified that he was well acquainted with George and Louisa Katzing and had been for more than twenty-five years last past and often visited at their

place of business; that the said deceased told the witness that he was just an employee, working for a salary; that witness knew in a general way the location of the property described in the bill and had since 1906; that the said George Katzing told him on one occasion that he (George) was going to look at some property for his sister and invited witness to go along; that the sister, Louisa, told the witness to go with her brother and if the property looked good to buy it for her; that the said deceased told the witness that his sister had some money to invest and it was a good way to put the money into a house and that he was glad that she was going to do it; that she was going to build a house; that on their return the sister asked, "Did you buy the lot?" and witness said, "I sure did; all you have to do is to fork over the money;" that she said, "I have the money to pay for it ready; I am glad it suited you; if it suits you it will suit me;" all of which was said in a joking manner; that after that they started to build a house on Grand View Drive, on said property; that afterward the said brother showed witness a map showing the location of the property; that said brother, acting as agent for his sister, bought more property in the subdivision.

James Huxtable, a merchant tailor, who knew the deceased, George Katzing, and his sister, the complainant, for a period of thirty years, and who for a number of years conducted his business next door to that of the complainant, testified that whenever the deceased spoke of any investment he included the complainant, using the pronoun "we."

The testimony further shows that in 1902 George Katzing was declared a bankrupt. In his testimony he stated at that time that he had no assets which could be applied to the payment of his debts; that he went out of business in January, 1892, and since that time he was assisting his sister; that he had no interest in the store; that his sister paid him $10 per week; that he had no interest in any real estate in Peoria county or elsewhere.

On behalf of appellant, Edith L. Wiegand testified that while on a visit in December, 1910, at the home of the Katzings, on Grand View Drive, the said George Katzing in the presence of his sister pointed in the distance to certain parcels of land and stated that the greater portion was owned by him and the balance by Louisa; that in another conversation he stated that he built and planned the house on Grand View Drive; that the land consisted of about two acres; that the witness understood that at that time he, the said brother, was operating the store and furnished the coal and all provisions for the house; that he requested witness to make purchases for him in DesMoines of certain nursery stock for said home.

Carrie Wiegand, the appellant, who is a sister of George Katzing, testified that he started business in 1883 in Rouse's Hall, 416 Main street, and very shortly thereafter failed in business; that he failed the second time while in the Taylor building, 437-439 Main street, about the time of his mother's death, in 1892; that at that time the candy was made on Fourth street, at the candy factory; that at that time the witness rented the Bush building and furnished her said brother with $1000 with which to conduct his business, taking as security a chattel mortgage on the fixtures, a certified copy of which was introduced in evidence.

The only testimony in the record inconsistent with the claim of the complainant is that of Edith L. Wiegand, who testified to certain conversations with the deceased in which he stated that he owned a portion of the land and that the balance was owned by the complainant. Nothing appears from the evidence as to what land he referred to, nor is there any evidence in the record of land taken in the name of complainant and her brother other than the lot herein referred to. The testimony of Carrie Wiegand that she loaned $1000 to the deceased in 1892 for the purpose of establishing a business on Main street does not affect the claim of complainant, for the reason that the deceased in

1902 testified in a bankruptcy hearing that he did not then own any portion of the candy business on Main street and that he had no money or property whatever. It is evident, therefore, that if he had had any interest whatever in the candy business, testified to by other witnesses as having been established by the complainant in 1892, that interest became extinct before the year 1902. All of the property in question in this case was acquired subsequent to 1902,— in fact, within six years of the filing of the complainant's bill. It is evident from this record that the deceased in the purchase of this property was merely acting as the agent of the complainant and that it was her money which went into the purchase of the same.

As we view the evidence the master was correct in his finding of fact and conclusions and the circuit court did not err in entering a decree in accordance therewith. The decree of the circuit court will therefore be affirmed.

*Decree affirmed.*