(No. 19256.—

PETER J. FALGOWSKI, Appellant, *vs.* WILLARD DANIEL, *et al.* Appellees.

*Opinion filed December 20, 1928.*

GEORGE W. HESS, for appellant.

WALTER W. DUFT, and NEWELL MECARTNEY, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellant filed his bill in chancery December 23, 1926, against defendants, appellees here, to establish a resulting trust in Theresa Daniel, for complainant's use, in premises described as 433 North Springfield avenue, Chicago. The bill alleged that complainant furnished the money to pay for the property and that the deed was made to Mrs. Daniel, who is the mother of defendants to the bill, appellees here. After answer filed, the cause was referred to Wirt E. Humphrey, master in chancery of the superior court of Cook county, to take and report the evidence and his conclusions of law and fact. After hearing the evidence the master reported, recommending that a decree be entered in accordance with the prayer of the bill. He overruled objections to the report filed by defendants, and they were renewed as exceptions before the chancellor. The chancellor sustained the exceptions and rendered a decree dismissing the bill for want of equity at complainant's cost, and he has brought the case here for review by appeal.

The material facts are, that for a number of years prior to the 21st of May, 1921, appellant and his wife lived upon premises known as the southwest corner of Twentieth and Paulina streets, in the city of Chicago. They separated and agreed upon a financial settlement. Appellant sold the premises at Twentieth and Paulina streets for $19,000 cash. In the settlement with his wife he paid her $7000, and after paying broker's commissions, abstract fees and other ex-

penses had left the sum of $11,790, which he deposited on May 21, 1921, to his own account in the savings department of the Kaspar State Bank of Chicago. For about ten years prior to May 21, 1921, Theresa Daniel and her four children lived in the rear of the cottage situated on the premises at the southwest corner of Twentieth and Paulina streets, which premises were owned by appellant. Mrs. Daniel's husband was a foster or adopted son of appellant and died about 1912. There is no proof that Mrs. Daniel ever paid any rent for the premises occupied by her at Twentieth and Paulina streets. She had no property and was supported by the county and by appellant and others and did some housework for other people. In June, 1921, appellant contracted with John G. Sweitz for the North Springfield avenue property and paid him $150 as earnest money on the deal. The trade was consummated and a deed made by Sweitz and wife to Mrs. Daniel July 6, 1921, for $2550, subject to an incumbrance of $1000. Sweitz was paid $2550 in cash at the time the deed was made. Sweitz testified the deed was executed in a real estate office on Cicero avenue, and that when he arrived at the real estate office, appellant, Mrs. Daniel and two or three small children were in the office; that witness arrived a little late; that the money to pay for the property was on the table and Mrs. Daniel handed it to him; that he had previously received $150 of the purchase money from appellant. Witness immediately moved out of the property and appellant and Mrs. Daniel moved in. The property had been encumbered for $1650, on which $650 had been paid. The balance of $1000 was paid on or about January, 1923, by a cashier's check on the First National Bank of Cicero and the trust deed was released. The proof further shows that on July 27, 1921, appellant withdrew from the bank $7000, and on August 3, 1921, a joint account was opened in the savings department of the First National Bank of Cicero in the name of Peter Daniel and Theresa Daniel. Peter

Daniel was appellant, and his name is Falgowski. At the time the joint account was opened a deposit was made of $2000. On August 8, 1921, another deposit of $2000 was made, and on August 25, 1921, a $1500 deposit was made. No other deposits were ever made to the joint account. The withdrawal of $1000 was made January 23, 1923. A few days later the balance due on the encumbrance on the property was paid to the trustee and the trust deed released. Counsel for appellees admit appellant was able to raise the $2550 for the purchase of the property at the time it was purchased but deny that he did so.

It is the contention of appellant that Mrs. Daniel was a widow, whose deceased husband was the foster son of appellant; that she lived with her four sons in premises belonging to appellant and paid no rent therefor. She was furnished assistance as a poor person by the county, appellant and others, and did some housework herself. It is beyond dispute that she had no property or income until her eldest son began to work. He began work in 1917, when thirteen or fourteen years old, and testified that his net earnings up to July 6, 1921, were $3905.50. He began work at $12 per week but from time to time he secured better pay, and his average weekly earnings were $18.44.

Lawrence Daniel testified he was twenty-two years of age at the time of testifying and that he began work in 1919, at the age of fourteen years. His wages were $8 per week when he began. Later he was paid $26 per week, and was receiving that sum when Mrs. Daniel and her children moved into the Springfield avenue property. He then went to work for another employer at $27 per week. Up to July 6, 1921, he had received $2028, out of which his mother paid him for expenses for himself about $1.50 per week, amounting to the entire sum of $144, leaving his net earnings up to that time at $1884.

Peter M. Daniel was twenty years old when he testified and said he went to work December 24, 1920, at $10 per

week for a year and a half. He then engaged in work for another employer at $17 per week for two years, and then was employed by a railroad company at $23.98 per week up to the time of his mother's death. He testified he turned all his earnings over to his mother except the sum of one dollar per week for spending money. His total net earnings before his mother's death were $252, or an average of $9 per week.

It is incredible that Mrs. Daniel could have saved enough money to have bought and paid for the Springfield avenue property, above the board, clothing and other necessary expenses of the family, out of the sums paid her from the earnings of her three boys. There is no evidence whatever that she ever had any bank account anywhere until the third day of August, 1921, when the joint account was opened. The conclusion seems irresistible that the money placed in this joint account was the money of appellant, as there is no evidence whatever of any income of Mrs. Daniel prior to her son Willard going to work at the age of thirteen or fourteen in 1917, and we cannot imagine that she could have saved, above all expenses of living, enough out of the wages of her three sons, who at different times went to work, to raise the money to pay for the Springfield avenue property.

Appellant also proved by five different persons that at various times after the purchase of the North Springfield avenue property Mrs. Daniel said appellant had purchased said premises. Three of appellees testified that after the purchase of the Springfield avenue property, approximately about 1923, Mrs. Daniel stated to her sons that the property was theirs and was all paid for; that appellant was present when she made these statements and said nothing. Appellant testified that this was not true. Appellees criticise the testimony of the five witnesses who testified for appellant that Mrs. Daniel said appellant had paid for the property, and substantially say that it is unworthy of belief, and that

its credibility was also affected by the facts testified to by the witnesses. The five witnesses were, so far as the record shows, totally disinterested in the litigation, and there is nothing in their testimony to create doubt or suspicion of its truthfulness. It was uncontradicted by any other witness. The testimony of appellees that their mother said in the presence of appellant that the property was hers and was paid for was contradicted by appellant. According to appellees' testimony Mrs. Daniel did not claim that she had paid for the property with her own money, but that it was paid for and was hers. She made no statement that appellant did not furnish the money to pay for the property, and we are of opinion that appellees' testimony is not sufficient to overcome the other testimony in the record that the property was paid for by the money of appellant.

There is no testimony as to who prepared the deed from Sweitz to Mrs. Daniel or of any instructions given for its preparation. Sweitz testified the deed was prepared when he arrived at the place of its execution, and the money to pay for the purchase was lying on the table. He and his wife signed the deed. We cannot escape the conclusion from the evidence that the purchase price was paid by appellant and that a trust resulted in his favor. A resulting trust does not spring out of a contract or agreement but results, as a matter of law, from the acts of the parties and arises at the time of the execution of the conveyance. In *VanBuskirk* v. *VanBuskirk*, 148 Ill. 9, the court said, where a "payment of the purchase money by one and conveyance of the title thereby purchased to another are found to exist, then the law so construes those two facts as to make them constitute a resulting trust, and for this reason such a trust is said to arise by operation of law." A resulting trust may be established by parol evidence. In *Katzing* v. *Wiegand*, 286 Ill. 646, the court said it was not material whether the purchase was made by the trustee or the *cestui que trust*. If the fact was that the *cestui que trust*

paid the purchase price a trust resulted in his favor by operation of law.

Appellees contend that the proof was not sufficient that appellant paid the purchase price of the property, and say that before the title would be transferred by a court the facts upon which the transfer is based must be so convincing as to leave no reasonable doubt in the minds of the court; that the facts must not be ambiguous expressions of uncertain declarations made by the parties sought to be charged and testified to by witnesses after the lapse of several years, and several cases are cited sustaining that rule. Among them is *Wells* v. *Messenger,* 249 Ill. 72, and cases there cited, *Chechik* v. *Koletsky,* 311 id. 433, and *Baughman* v. *Baughman,* 283 id. 55. Appellees also cite *Streeter* v. *Gamble,* 298 Ill. 332, asserting that force is added to the rule requiring convincing proof where there has been long delay, death of witnesses and loss of evidence, rendering it practically impossible to make a defense. All of those cases are undoubtedly sound and the rule announced in them has been repeatedly stated in other cases. There was no such delay in filing the bill in this case that it can be said to be unreasonably long and to affect the rule requiring proof. The property was purchased in July, 1921, and both appellant and Mrs. Daniel and her family moved into it very soon thereafter. Mrs. Daniel died April 14, 1926, and appellant filed a bill in this case December 23, 1926. The death of Mrs. Daniel affected the competency of appellant as a witness but did not affect the competency of the documentary proof or of appellees' testimony.

Summing up the report of his conclusions, the master stated "that the master is satisfied from all the evidence, and finds, that all of the money that was paid for said premises No. 433 North Springfield avenue was the money of the complainant, Peter J. Falgowski, and that the title

to the said premises was taken in the name of Theresa Daniel, who held the legal title thereto in trust for the complainant." We are unable to find anything in the facts or circumstances proved which would justify us in coming to a different conclusion than that of the master.

The court erred in sustaining exceptions to the master's report and dismissing the bill. The decree is reversed and the cause remanded, with directions to enter a decree as prayed in appellant's bill.

*Reversed and remanded, with directions.*