Anna E. Sweesy, Administratrix of the Estate of Harry M. Hess, etc., Plaintiff and Cross Defendant, v. Alfred C. Hoy et al., Defendants and Cross Defendants. Mary Olive Hess, Defendant and Cross Complainant.

Anna E. Sweesy, Administratrix of the Estate of Harry M. Hess, Deceased, and Guardian of the Estate of Harry M. Hess, Jr., Plaintiff in Error, v. Alfred C. Hoy et al., Defendants in Error.

Gen. No. 36,140.

Opinion filed November 21, 1933.   Rehearing denied December 4, 1933.

CHESTER D. KERN and ALANSON C. NOBLE, for plaintiff in error.

CARNAHAN & SLUSSER, for defendant in error Mary Olive Hess.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

By this writ of error, Anna E. Sweesy (hereinafter referred to as complainant), administratrix of the

estate of Harry M. Hess, deceased, and guardian of the estate of Harry M. Hess, Jr., seeks to reverse a decree of the superior court dismissing complainant's original bill for want of equity and granting Mary Olive Hess, one of the defendants and cross complainant (hereinafter referred to as cross complainant), relief as prayed in her cross-bill. Alfred C. Hoy, Carl D. Baker, John L. Hess, Union Bank of Chicago, and the Chicago Title & Trust Company, were also made defendants by the original bill of complaint.

The bill alleged that in January, 1923, Martin J. Ahern conveyed certain lands described to the Chicago Title & Trust Company, trustee, under a trust agreement that the trustee would hold for the ultimate use and benefit of Carl D. Baker a 5/10 interest; Alfred C. Hoy a 3/10 interest; John L. Hess a 1/10 interest, and Harry M. Hess a 1/10 interest; that the deed in trust recited that it was understood between the parties that the interest of each and every beneficiary, and of persons claiming under them, should consist solely of a power of direction to deal with the title to the property and the right to receive the proceeds from rentals and sales, and that such right in the avails of the property should be deemed personal property, and be assignable as such, and in case of the death of a beneficiary his interest should pass to his executor or administrator, and not to his heirs; that the beneficiary should have no right, title or interest in any portion of the real estate, as such, but only an interest in the proceeds, it being the intention to vest the full legal and equitable title in the trustee; that Harry M. Hess died October 1, 1923, and left Harry M. Hess, Jr., surviving as his only child; that October 3, 1923, Carl D. Baker, Alfred C. Hoy and John L. Hess, the surviving beneficiaries, requested the Chicago Title & Trust Company, in writing, to convey the title to one George T. Preschern, which the trustee

did, and on the same day Preschern conveyed the property to the Union Bank of Chicago under a trust agreement similar to the one under which the Chicago Title & Trust Company held the property, except that Harry M. Hess was not mentioned as a beneficial owner, but Mary Olive Hess was declared to be the owner of an undivided 1/10 interest; that the conveyances from the Chicago Title & Trust Company to Preschern, and from Preschern to the Union Bank of Chicago, were fraudulent as to the heirs and creditors of Harry M. Hess and made for the purpose of diverting the 1/10 beneficial interest from the estate of Harry M. Hess, deceased; and prayed for a decree declaring said 1/10 interest to be the property of the heirs at law of Harry M. Hess, for an accounting, injunctional and general equitable relief.

The answers of Alfred C. Hoy, Carl D. Baker, John L. Hess, the Union Bank of Chicago, and the Chicago Title & Trust Company, admitted the several conveyances as charged, but denied that Harry M. Hess had any interest in the real estate and asserted that the conveyances were made for no other purpose than to convey the legal title to the Union Bank of Chicago to be held in trust for the benefit of Carl D. Baker, Alfred C. Hoy, John L. Hess and Mary Olive Hess, the equitable owners, and that Mary Olive Hess claims the entire beneficial interest in the undivided 1/10 of the property in her own right as the purchaser of same out of her separate estate.

The answer of Mary Olive Hess admits the conveyance in trust to the Chicago Title & Trust Company by Ahern, and the execution of the declaration of trust in which Harry M. Hess was named as beneficiary; the transfer to Preschern after the death of Harry M. Hess, and by him to the Union Bank of Chicago in trust, and the execution by that bank of its declaration of trust in which Mary Olive Hess was named a

beneficiary in place of Harry M. Hess, after his demise. Her answer denied that Harry M. Hess had any interest in the property.

The amended cross-bill of Mary Olive Hess alleged that on or about January 11, 1923, she entered into a verbal agreement with the cross defendants Carl D. Baker, John L. Hess and Alfred C. Hoy, that they would together purchase the real estate described in the bill and would severally advance the purchase price as follows: Carl D. Baker 5/10 thereof; Alfred C. Hoy 3/10; John L. Hess 1/10 and Mary Olive Hess 1/10; that in pursuance of said verbal agreement cross complainant placed in the hands of Baker, John L. Hess and Hoy, out of her own personal, separate and undivided funds $5,000, as a part of the purchase price of her undivided 1/10 interest in the real estate, Baker, John L. Hess and Hoy then and there agreeing to pay the remaining 9/10 portion of the purchase price in accordance with the proportions above set forth; that Baker, John L. Hess and Hoy entered into negotiations with Oris P. Van Sweringen, Otto Miller and Ralph Van Vechten, the owners of the property who held title in the name of the Calumet Trust Company, for the purchase of the real estate in accordance with said verbal agreement; that Carl D. Baker and John L. Hess caused an agreement in writing dated January 12, 1923, to be entered into between the vendor and themselves as the ostensible purchasers; that the agreement was for the use and benefit pro rata of the cross complainant and Baker, John L. Hess and Hoy, in proportion to that part of the purchase price contributed and to be contributed by each respectively; that at the time of the execution of this agreement Baker and John L. Hess paid the vendor $15,000 earnest money, which was contributed in proportion as follows: $7,500 or 5/10 part thereof by Carl D. Baker; $4,500 or 3/10 part thereof by Alfred C. Hoy;

$1,500 or 1/10 part thereof by John L. Hess; and the remaining $1,500 or 1/10 part thereof by cross complainant; and that thereby all of the said real estate and the proceeds arising or to arise therefrom became and were, and ever since have been, impressed with a resulting trust for the use and benefit of cross complainant, Baker, John L. Hess and Hoy, in accordance with their respective interests therein.

It further alleged that on or about March 11, 1923, Baker, John L. Hess and Hoy paid the vendor, on account of the purchase price, the further sum of $35,000 as follows: $17,500 or 5/10 by Baker; $10,500 or 3/10 by Hoy; $3,500 or 1/10 by John L. Hess, and the remaining $3,500 or 1/10 by cross complainant; that April 19, 1923, by arrangement between Baker, John L. Hess and Hoy, and the vendor, the legal title of the real estate was caused to be conveyed to the Chicago Title & Trust Company, by deed dated January 12, 1923, and recorded April 20, 1923; that the Chicago Title & Trust Company executed a certain deed of trust dated January 12, 1923, to secure the payment of the balance of the purchase price of $112,288, and concurrently executed a trust agreement, purporting to declare a trust in the proceeds of said real estate, and designated and named Harry M. Hess a beneficiary to the extent of an undivided 1/10 interest, instead of inserting therein the name of Mary Olive Hess as a beneficiary; that the cross complainant relied upon Baker, John L. Hess and Hoy in the procedure to be adopted in taking title and procuring satisfactory evidence of her interest; that the conveyance to the Chicago Title & Trust Company, and the making of the supposed trust agreement, were effected and carried out without the knowledge or consent of cross complainant as to any of the terms thereof, and that she for the first time discovered and learned the details regarding this transaction and the

terms of this supposed agreement long after the execution of same.

It also alleged that, upon the conveyance to the Chicago Title & Trust Company, cross complainant, Baker, John L. Hess and Hoy became the equitable owners of all of said real estate and the proceeds, that the action of the Chicago Title & Trust Company in designating Harry M. Hess a beneficiary was without warrant in law, and should be set aside, and her interest in said 1/10 should be established and confirmed.

It further alleged that she was the wife of Harry M. Hess during all of said transactions; that Harry M. Hess was employed by John L. Hess as a real estate salesman on a salary and commission; that he never contributed any portion of the purchase price of the real estate, and that he never had any interest in it. The cross-bill detailed arrangements to anticipate the payment of the balance of the purchase price of $112,288, at a discount of 12½ per cent, and that the transaction was to be consummated October 1, 1923, by conveyance to Preschern, and by him to the Union Bank of Chicago, and the payment of the required amount to the vendors; that the arrangement to convey to the Union Bank of Chicago had been made with the full knowledge of Harry M. Hess; that the amount to be paid to take up the balance of said purchase price of $112,288, was $99,765.59; and that cross complainant paid over her proportionate share.

The cross-bill prayed that the court find and decree that Anna E. Sweesy, neither individually nor as administratrix, nor as guardian has any right, interest or claim in the real estate or any portion thereof nor in the proceeds, or that any right, title or interest ever passed to the heirs or legal representative of Harry M. Hess or became a part of his estate; that the trust agreement made by the Chicago Title & Trust Com-

pany, January 12, 1923, in so far as it purports to vest an undivided 1/10 beneficial interest in the real estate and the proceeds thereof in Harry M. Hess, should be set aside and held for naught, and that all of said real estate and the proceeds therefrom may be impressed with a trust in favor of the cross complainant to the extent of an undivided 1/10 interest and decreed to be her sole and absolute property, and that the Union Bank of Chicago be decreed to be the holder of the naked, legal title of said real estate in trust for cross complainant, Baker, John L. Hess and Hoy, in the proportions above set forth.

Complainant's answer denied all the claims and allegations of the cross-bill.

This cause was before this court on a former appeal from a decree likewise dismissing the original bill for want of equity and finding that the property and its proceeds were impressed with a resulting trust in favor of cross complainant to the extent of an undivided 1/10 interest in same. Complainant appealed from the former decree to the Supreme Court, but the cause was transferred to the Appellate Court on the ground that no freehold was involved. (324 Ill. 319.) This court reversed the decree and remanded the case for a new trial because of the erroneous admission of evidence of certain witnesses as to matters occurring prior to the death of Harry M. Hess. (246 Ill. App. 442.)

Complainant contends (1) that the trust established in the Chicago Title & Trust Company, in which Harry M. Hess was named as a beneficiary, was an executed express trust in real estate, completely created in writing, and that his interest could not be diverted after his death by his cobeneficiaries; and (2) that the diversion of the interest of Harry M. Hess after his death by his cobeneficiaries was a fraud upon his estate.

Cross complainant's theory is that she is entitled to the disputed 1/10 interest in the property in question under a resulting trust which came into existence prior to the execution of the declaration of trust by the Chicago Title & Trust Company, under which complainant claims, and which resulting trust was created because it was her money which paid for the 1/10 interest in the property.

Numerous errors have been assigned by complainant. Ten points have been urged by her in support of her contentions and an abundance of authorities have been cited as upholding same. These propositions have been exhaustively treated in the briefs of both parties to this proceeding, but in its final analysis we feel that the material determining question presented for our consideration is whether it has been shown conclusively by clear, unmistakable, unequivocal evidence that the money, with which the undivided 1/10 interest in the property in controversy was purchased, belonged exclusively to the separate estate of cross complainant.

The cause was referred to a master in chancery to take proofs and report his findings of fact and conclusions of law to the court.

It appeared that the vendor of this property, approximating 412 acres and situated in the extreme southern section of Chicago, by agreement of the parties, April 16, 1923, transferred the title in fee to one Ahern (a dummy holder), who in turn April 19, 1923, by warranty deed, conveyed the property to the Chicago Title & Trust Company, as trustee, ''under the provisions of a trust agreement dated January 12, 1923''; that Ahern's deed was also dated as of January 12, 1923, although it was recorded April 19, 1923; that the deed from Ahern contained the provision that the interest of the beneficiaries under the trust agreement was only in the earnings, avails and proceeds

of the property and was to be considered personal property; that the declaration of trust agreement, dated January 12, 1923, was signed by the Chicago Title & Trust Company, Baker, Hoy, John L. Hess and Harry M. Hess, and declared their respective interests as beneficiaries to be: Baker an undivided 5/10; Hoy an undivided 3/10; John L. Hess an undivided 1/10, and Harry M. Hess an undivided 1/10, and provided that the interest of any beneficiary was solely a power of direction to deal with the title and the right to receive the proceeds; that the Chicago Title & Trust Company would deal with the title only on the written direction of any three of the beneficiaries; that such right to the proceeds shall be deemed to be personal property and in case of the death of any beneficiary his interest shall pass to his administrator or executor and not to his heirs at law.

It further appeared that Harry M. Hess died October 1, 1923, and that October 3, 1923, the surviving beneficiaries, under the trust agreement of January 12, 1923, directed the Chicago Title & Trust Company, in writing, to convey the property to one Preschern; that Preschern on the same day conveyed it to the Union Bank of Chicago, as trustee; that also on the same day a declaration of trust agreement was executed by the Union Bank of Chicago naming Hoy, John L. Hess and Baker beneficiaries, and declaring cross complainant to be the beneficiary of the undivided 1/10 interest in the property that was in the name of Harry M. Hess in the original trust agreement with the Chicago Title & Trust Company; that cross complainant was the second wife of Harry M. Hess, deceased, and Harry M. Hess, Jr., was his son by his first marriage.

Except for the declaration of Harry M. Hess's interest in the property, under the terms of the original declaration of trust, there is no evidence in the record that he contributed anything toward the purchase

of the property or that it was the intention of anyone that he should have a beneficial interest in it.

Undisputed evidence, introduced by Mary Olive Hess, cross complainant, demonstrates that January 12, 1923, Baker and John L. Hess entered into a contract in writing for the purchase by them of the property in question from the Calumet Trust Company for $400 an acre; that they paid $15,000 as earnest money to apply on the purchase when consummated; that the property was to be conveyed to the Chicago Title & Trust Company when $50,000 of the purchase price was paid, notes and trust deed to be given to secure the balance of same; that the additional $35,000 necessary to make up this $50,000 was paid to the Chicago Title & Trust Company, March 21, 1923, by John L. Hess's check for $7,000, Hoy's check for $10,500, and a cashier's check for $17,500 purchased by Baker; that the $50,000 was paid to vendor, April 19, 1923, and deeds from the vendor to Ahern, from him to the Chicago Title & Trust Company, trustee, and the declaration of trust agreement by the Chicago Title & Trust Company, were executed, as well as a special trust deed by the Chicago Title & Trust Company securing its notes for the balance of the purchase price, $112,288; that during August, 1923, the property was subdivided and at least 52 lots were sold prior to October 1, 1923, the date of the death of Harry M. Hess; that all of such sales were made on printed forms in which the Union Bank of Chicago, as trustee, was named as vendor; that a set of books was opened by the beneficial owners of the property, August 15, 1923, and the name of O. M. Hess (Mary Olive Hess) appeared in the first entry in the cash journal as contributing her 1/10 share of the original bank deposit of $1,000; that the cash journal under date of October 3, 1923, showed that Baker paid $45,000, Hoy $27,000, John L. Hess $9,000, and O. M.

Hess (Mary Olive Hess) $9,000, which with $9,765.59 collected from the sale of lots prior to that date aggregated $99,765.59, that was paid to the vendor as the balance of the purchase price of the property; that October 3, 1923, the vendor, as the culmination of negotiations that had theretofore been carried on by the parties, allowed the purchasers a discount of 12½ per cent of the balance due and accepted $99,765.59 as full payment, in lieu of $112,288, the unpaid balance of the purchase price; that cross complainant's payment of her share ($9,000 of that balance) was made by a check of John L. Hess for $6,300, which he said was not his money but was given him by cross complainant, and her own check for $2,700 payable to John L. Hess, and by him indorsed to the vendor, the Calumet Trust Company; that John L. Hess was reimbursed for his payment of the $15,000 earnest money by each of the beneficiaries in proportion to his or her interest in the property, cross complainant's payment being evidenced by a check drawn on her account in the Stony Island Trust & Savings Bank for $1,500 or 1/10 of the amount by her husband Harry M. Hess; that cross complainant paid her 1/10 share of the $35,000, heretofore referred to, by a check drawn on her account in the same bank by Harry M. Hess for $3,500 and payable to John L. Hess; that Harry M. Hess did not at that time and never had an account in the Stony Island Trust & Savings Bank where cross complainant carried her account; that she carried an account in that bank and authorized Harry M. Hess, as her attorney in fact, to draw checks on her account; and that the checks for $1,500 and $3,500, drawn by Harry M. Hess, were charged to her account in that bank.

Complainant relies on the original declaration of trust executed by the Chicago Title & Trust Company, and signed and sealed by Baker, Hoy, John L.

Hess and Harry M. Hess, to establish her claim that Harry M. Hess was completely and expressly vested with a beneficial interest in an undivided 1/10 of this property, which she maintains could not be destroyed by any act of the surviving beneficiaries of the trust after his death.

The evidence introduced before the master amply supported his finding that no money of Harry M. Hess went into the purchase of this property, and it was conclusively shown that cross complainant's separate money was used to purchase the undivided 1/10 interest in the property declared to be his under the original trust agreement.

As the master found in his report, the repudiation of their original trust agreement by his cobeneficiaries two days after the death of Harry M. Hess, and their undertaking to annul and wipe out that agreement, specifying that he was the owner of an undivided 1/10 interest, and replace it with a similar trust agreement declaring that cross complainant was the beneficial owner of the undivided 1/10 interest, rather than Harry M. Hess, her deceased husband, might be considered as throwing a suspicion of fraud upon the transaction, but a careful analysis of the evidence leads inevitably to the conclusion that what appears at first blush to be the conduct of persons having fraudulent designs was in fact conduct designed to carry out the intention of all parties concerned.

A number of reputable, disinterested witnesses, whose testimony stands unimpeached on the record, testified that the deceased had both before and after the execution of the trust agreement naming him as beneficiary, declared that it was cross complainant's money that purchased the 1/10 beneficial interest in the property; that his name was used in the original trust agreement instead of hers erroneously; that he intended to have the mistake rectified; that he dis-

claimed any interest in the property and that he was acting solely in behalf of his wife as her agent. The books of account of the beneficial purchasers, records of the Stony Island Trust & Savings Bank, and other evidence in the record, clearly and unmistakably show that it was cross complainant's money, and her money only, with which this undivided 1/10 interest in the property was purchased.

That it was contemplated transferring the trust to the Union Bank of Chicago, and executing a trust agreement that would speak the truth as to the ownership of the respective beneficial interests in the property prior to the death of Harry M. Hess, was evidenced by the execution, beginning in August, 1923, of contracts of sale of the subdivided property on forms containing the name of the Union Bank of Chicago, trustee, as vendor, and by statements made by Harry M. Hess to certain of the witnesses that he did not want to bother substituting cross complainant for himself as beneficiary of the undivided 1/10 interest under the trust agreement with the Chicago Title & Trust Company, because the trust was about to be transferred to the Union Bank of Chicago, and that when the transfer was made he would see that cross complainant's name was substituted in the new trust for his own.

Under the circumstances the law impresses a resulting trust on the property purchased in favor of the party whose money was used in the purchase and it is immaterial whether the purchase was made and the money actually paid by the trustee, or the *cestui que trust,* provided the money was in law the property of the *cestui que trust.* In following this established rule in *Falgowski v. Daniel,* 333 Ill. 208, 213, 214, the court said:

''We cannot escape the conclusion from the evidence that the purchase price was paid by appellant and that

a trust resulted in his favor. A resulting trust does not spring out of a contract or agreement but results, as a matter of law, from the acts of the parties and arises at the time of the execution of the conveyance. In *VanBuskirk v. VanBuskirk,* 148 Ill. 9, the court said, where a 'payment of the purchase money by one and conveyance of the title thereby purchased to another are found to exist, then the law so construed those two facts as to make them constitute a resulting trust, and for this reason such a trust is said to arise by operation of law.' A resulting trust may be established by parol evidence. In *Katzing v. Wiegand,* 286 Ill. 646, the court said it was not material whether the purchase was made by the trustee or the *cestui que trust.* If the fact was that the *cestui que trust* paid the purchase price a trust resulted in his favor by operation of law.''

Cross complainant's theory that a resulting trust in her favor was impressed on the property, prior to the execution of the declaration of trust agreement by the Chicago Title & Trust Company, by reason of the fact that it was her money that paid for the undivided 1/10 interest, is distinctly borne out by all the facts and circumstances of the case and sustained by the authorities of every jurisdiction in the United States.

It is not imperative that one claiming a resulting trust by operation of law shall have actually paid all or part of the purchase price at the time of the conveyance. But it is sufficient if a grantee (beneficiary) advances the purchase price, part for himself and part for another, as such action amounts in effect to loaning such other person the money so advanced for his benefit, and the resulting trust is raised in favor of such other person to the extent of the money so advanced or loaned. (*Towle v. Wadsworth,* 147 Ill. 80, 96.) Some advances were made in behalf of cross complainant, but that her interest was ultimately paid

for out of her own separate funds has been fully and clearly shown. When a person claiming a resulting trust once shows that the money furnished for the purchase price belonged to him, the burden is on the nominal grantee (beneficiary) to show that it was intended that he should have a beneficial interest in the property. In the case of *Niland v. Kennedy,* 316 Ill. 253, 262, the court said:

"Where it is shown, as it is by this record, that the purchase money has been furnished by one party and the deed has been made to another, the presumption is in favor of the trust resulting to the party furnishing the consideration, and the burden is on the one holding the legal title to show it was intended he should have some beneficial interest in the property. (*Lutyens v. Ahlrich,* 308 Ill. 11; *Crawford v. Hurst,* 307 id. 243.)"

As heretofore noticed complainant offered no evidence to show that Harry M. Hess paid any part of the purchase price with his own funds.

A resulting trust arises when the purchase money is paid by one person and the title is taken in the name of another, and this rule applies in favor of one who pays part only of the purchase price. This rule is well stated in *Hinshaw v. Russell,* 280 Ill. 235, 240:

"Such a trust also 'results in favor of one who pays only a part of the price. In other words, where two or three persons together advance the price and the title is taken in the name of one of them, a trust will result in favor of the other with respect to an undivided share of the property, proportioned to his share of the price.' (3 Pomeroy's Eq. Jur., sec. 1038. See, also, 1 Perry on Trusts,—6th ed.—sec. 126.)"

It is a settled doctrine that where property is conveyed to a husband and the purchase price therefor is furnished by the wife there is no presumption of an advancement, gift or loan to the husband, but a re-

sulting trust is created in favor of the wife in the absence of positive testimony evidencing an intention to the contrary. In *Crawford v. Hurst,* 299 Ill. 503, 508, this language was used by the court:

"Where a husband takes title to land bought with his wife's money there is no presumption of a gift or advancement to him, as there is no legal obligation on the part of the wife to support him. · In such case it is not necessary, in order to establish a resulting trust in favor of the wife, to show an intention by the parties to create a trust at the time of the transaction."

It is urged by complainant that to sustain the theory of cross complainant it would be necessary to attempt to impress a resulting trust on the already expressly declared trust under which Harry M. Hess was named beneficiary of an undivided 1/10 interest in the property. It is conceded that under the law a resulting trust cannot be imposed where the identical property is already subjected to an express trust. The resulting trust in favor of cross complainant had been fully created and was in full force and effect at the time of the attempted creation of the express trust for the benefit of Harry M. Hess. We must reach this conclusion, whether we consider that the resulting trust came into being when the original purchase contract was made by Baker and J. L. Hess, as ostensible purchasers, or whether we consider that it sprang into existence with the transfer of the legal title from the vendor, the Calumet Trust Company to Ahern, the "dummy" grantee. In either event the status and rights of the parties had been fixed.

Complainant insists that the decision of the Supreme Court, on the former appeal of this cause, established the interests of the beneficiaries under the trust instrument executed by the Chicago Title & Trust Company as personal property, and that it being such,

and not a freehold, a resulting trust could not attach to it.

Cross complainant urges that the trust agreement executed by the Chicago Title & Trust Company was void as having been made without her knowledge, acquiescence or consent, and her contention that the resulting trust in her favor attached, not to the beneficial interest which it was attempted to declare under the terms of the Chicago Title & Trust Company declaration of trust, but originally to the freehold conveyed by the warranty deed from the Calumet Trust Company to Ahern, is obviously sound.

It is true that the law of this case that no freehold is now involved in this proceeding was settled by the Supreme Court on the former appeal, but it is immaterial to the rights and equities of cross complainant whether a freehold is now involved or not. A resulting trust, having been created in favor of cross complainant, continued to exist in the property to which it attached regardless of the form the property subsequently took. The resulting trust was imposed in favor of cross complainant before the property became personal property and could not thereafter be divested or destroyed without her consent.

Cross complainant's beneficial undivided 1/10 interest in this property is personal property, but it only became such by reason of the conveyance of the property from the Chicago Title & Trust Company to Preschern, his quitclaim deed to the Union Bank of Chicago, and its declaration of trust naming her as beneficiary of the trust to the extent of an undivided 1/10 interest, and specifying that the interests of the beneficiaries were personal property.

The fact that the beneficial interest of cross complainant must be considered personal property cannot defeat her right or interest in the property once such interest has been established and the doctrine has long

been established that a resulting trust may attach to personal property just as effectively as it may be imposed on real estate. Referring to the rule relating to creation of resulting trusts, the following language is found in sec. 130, Perry on Trusts & Trustees, 7th ed., p. 201:

"The rule embraces personal property as well as real estate; and if a man purchase a bond, annuity, stock, mortgage, or other personal interest, in the name of a third person, the equitable ownership results to the person from whom the consideration moves." (See also 39 Cyc. 125; *Clapp v. Emery*, 98 Ill. 523, and *Ellsworth v. Miner T. Ames Co.*, 125 Ill. 223.)

We are of the opinion under all of the facts and circumstances appearing in this cause, that the conveyance by Ahern to the Chicago Title & Trust Company under an express declaration of trust naming Harry M. Hess as beneficiary, was in contemplation of law an attempt to impose an express trust on the resulting trust theretofore created in favor of cross complainant, Mary Olive Hess; that such attempted express trust was void as to her and in derogation and violation of her rights; and that the chancellor was warranted in setting it aside.

Other points have been urged, but in the view we take of the matter we deem it unnecessary to discuss them.

For the reasons indicated herein the decree of the superior court is affirmed.

*Affirmed.*

GRIDLEY and SCANLAN, JJ., concur.