(No. 30320.

FRED MURRAY, Appellee, *vs.* EDMUND A. BEHRENDT *et al..* Appellants.

*Opinion filed November 20, 1947—Rehearing denied Jan. 15, 1948.*

THOMAS S. WELDON, and STONE & STONE, both of Bloomington, for appellants.

CHESTER THOMSON, and BERNARD WALL, both of Bloomington, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

The plaintiff, Fred Murray, commenced this action in the circuit court of McLean County against the defendants, Edmund A. Behrendt and Dan Carmody, seeking to be adjudged the owner of an undivided one-half interest in

320 acres of land near Artesia, New Mexico. Behrendt is the owner of record of the real estate involved. Carmody, a former partner of plaintiff, filed a disclaimer of any interest in the property. The cause was heard before the chancellor, who found for plaintiff and entered a decree ordering Behrendt to execute and deliver to plaintiff a deed to an undivided one-half interest in the land. Behrendt, hereinafter referred to as the defendant, prosecutes a direct appeal to this court, a freehold being necessarily involved.

The facts are, in a large measure, undisputed. All the parties are now, and have been for many years, residents of Bloomington. On or about August 1, 1933, Behrendt, a physician and surgeon, acquired title to the land from a woman patient in exchange for his agreement to supply her with medical care and hospital services and to provide a proper funeral at the time of her death. Toward the end of December, 1933, the patient died. On December 28, 1933, defendant entered into an oral contract with Murray and Carmody, then engaged as partners in the undertaking business, whereby he agreed to convey to them an undivided one-half interest in the land in New Mexico in return for the partners' promise to provide a suitable funeral for defendant's grantor. The following day, Murray and Carmody fully performed their part of the contract. Shortly thereafter, defendant executed a deed. It was not delivered when drawn because it had not been signed by defendant's wife and defendant placed the deed in the files of his office. About the same time, defendant and his wife accompanied plaintiff and his son on an automobile trip to New Mexico to inspect the property. They found the land was situated in dry level country, unfenced, uncultivated, unimproved and of but little value.

In February, 1939, the office building in which defendant was located burned and the deed was destroyed in the fire without ever having been delivered. Within a week or so after the fire, all the parties met by chance at a local

hospital and the conversation turned to the property in New Mexico. Here the evidence is in sharp conflict. Defendant testified that he informed Murray and Carmody the deed had been destroyed in the fire and offered to have a new deed prepared; that Murray remarked to Carmody the property was almost desert land; that Carmody commented on the fact he, the defendant, had paid all the taxes since 1933, and that Murray then turned to him and said, "We might as well forget it," or words to this effect. Carmody's testimony corroborates defendant in all important particulars. Plaintiff, on the other hand, testified that, after defendant had apprised the partners of the destruction of the deed, he, speaking for the partnership, had accepted defendant's offer to prepare and deliver a new deed. All conversation relating to the low value of the land, consideration for defendant by virtue of his payment of taxes and the purported relinquishment of the partnership's right to a conveyance was flatly denied.

In October, 1940, Carmody withdrew from the partnership and executed a general assignment of all his interest in the firm's assets to Murray. Since that time the former partners have not been on speaking terms. The record further discloses that, according to plaintiff, at some time during 1941, a second conversation touching on the New Mexico property took place between himself and defendant at the same hospital and under much the same circumstances as the earlier meeting. Plaintiff testified that his son was also present and that, in response to his son's inquiry about any development of the property, defendant told them that he knew practically nothing more about it than he did after their trip in 1934 and, also, he thought it best to develop the land as a single unit of 320 acres rather than to divide it into two parcels of 160 acres each. Defendant denied both the substance and the occurrence of the conversation. Plaintiff explained his failure to call his son as a witness by stating that his son was in New York.

On September 1, 1945, plaintiff, through his attorney, made a demand upon defendant for a conveyance of a one-half interest in the property. Defendant refused to accede to the request. Defendant had paid all the taxes since 1933 and plaintiff had never offered to reimburse him for these expenditures. Defendant had received all the income from the property which, by 1945, amounted in the aggregate to no more than $275, and plaintiff had never even inquired about the rents and profits, much less demanded a distribution. Again, only once before, almost twelve years earlier, shortly after the death of defendant's grantor in 1933, had plaintiff requested a deed.

On this state of the record, the chancellor, although designating the cause as an action for specific performance, found that the land was impressed with a trust, that the equitable title to an undivided one-half interest had vested in plaintiff and entered a decree ordering defendant to execute a deed in favor of plaintiff. Plaintiff's case is apparently predicated on the theory of a constructive trust, although some confusion exists on this point. In the opening sentence of his argument the following statement appears: "Plaintiff-appellee is not relying on a formal declaration of trust, oral or written, and never did." Without making any distinction between resulting and constructive trusts, plaintiff makes the summary assertion that the record establishes an "equitable trust." On the other hand, defendant's argument is perfectly clear. Defendant relies on the Statute of Frauds, the Statute of Limitations, *laches* and mutual rescission of the contract, and denies the existence of any trust whatsoever.

Regardless of the theory of plaintiff's case, it is readily apparent that the Statue of Frauds is of fundamental importance in disposing of the present controversy. The English Statute of Frauds having been adopted as part of the common law of New Mexico, (*Childers* v. *Talbott*, 4 N.M. 168; N.M. Stat. 1941, chap. 19, par. 303,) and

the enactments of our General Assembly being substantially the same as the English statute in all particulars relating to the sale of lands and the creation of land trusts, (Ill. Rev. Stat. 1945, chap. 59, pars. 2 and 9,) no conflict-of-laws question arises. Considering first a cause of action grounded on the theory of specific performance of an oral contract for the sale of an interest in land, the Statute of Frauds is a complete bar to plaintiff's action. There being no written contract or memorandum signed by defendant, plaintiff's "rights" under the contract are unenforceable. While it is true that the Murray-Carmody partnership fully performed their part of the contract, this is not such performance as to remove the contract from the operation of the statute. *Winans* v. *Bloomer*, 321 Ill. 76; *Weir* v. *Weir*, 287 Ill. 495; *Temple* v. *Johnson*, 71 Ill. 13.

As to whether the action is based on an express trust, we may take plaintiff at his word and be assured that he does not rely on a formal declaration of trust, oral or written, and never did. Certainly, there is no written declaration of trust and, by the terms of the Statute of Frauds, a land trust created by parol is utterly void and of no effect. (Ill. Rev. Stat. 1945, chap. 59, par. 9.) In addition, there is a very serious question as to whether the purported oral declaration of trust, made in 1941, is indicative of an intent to create a trust.

Seeking to avoid the operation of the Statute of Frauds, plaintiff contends that the facts establish an "equitable trust." Since all trusts are equitable trusts, plaintiff presumably intends to rely on an implied trust, otherwise known as an involuntary trust or a trust created by operation of law, commonly divided into two classes, resulting trusts and constructive trusts, both of which are specifically exempt from the Statute of Frauds and may be proved by parol evidence. (Ill. Rev. Stat. 1945, chap. 59, par. 9.) While there is some confusion in distinguishing between resulting and constructive trusts, generally speaking, a re-

28

sulting trust arises where the purchaser of lands takes title in the name of another and the acts of the parties establish an actual or presumed intention to create a trust, (*Houdek* v. *Ehrenberger,* 397 Ill. 62; *Cook* v. *Blazis,* 365 Ill. 625; *Partridge* v. *Berliner,* 325 Ill. 253,) whereas a constructive trust is founded on fraud independent of any intention, actual or implied, to create a trust. *Kuzlik* v. *Kwasny,* 383 Ill. 354; *Steinmetz* v. *Kern,* 375 Ill. 616; *Suchy* v. *Hajicek,* 364 Ill. 502. •

In considering the present action as grounded on the theory of a resulting trust, it must be recognized that a resulting trust arises, if at all, the instant the legal title is taken and the title vests. (*Nickoloff* v. *Nickoloff,* 384 Ill. 377; *Spina* v. *Spina,* 372 Ill. 50; *Falgowski* v. *Daniel,* 333 Ill. 208.) From the testimony adduced at the trial, it appears that when defendant acquired the property on August 1, 1933, he alone furnished the entire consideration to his grantor and there was then no contract or understanding between defendant and the Murray-Carmody partnership whereby the undertakers were to provide a proper funeral for defendant's grantor in return for an undivided one-half interest in the property. Thus, when the oral contract was entered into on December 28, 1933, defendant held both the legal and equitable title and had so held the property for almost five months. This being true, the possibility of a resulting trust arising out of the inception of the oral contract must be excluded. Although defendant discharged part of his obligation to his grantor with a consideration supplied to him by the Murray-Carmody partnership, the contract came into existence after defendant had accepted a deed from his grantor. The contract of December 28, 1933, is therefore, incapable of supporting a resulting trust.

A constructive trust may arise by reason of fraud or it may be called into existence through the breach of a duty stemming from a fiduciary relationship. (*Brod* v. *Brod,* 390 Ill. 312; *Steinmetz* v. *Kern,* 375 Ill. 616.) The case

at bar is utterly devoid of any evidence tending to establish the existence of a fiduciary relationship. It is equally obvious that there was no fraud, mistake, duress or undue influence. Had defendant, from the very beginning, never intended to perform his part of the contract such intention coupled with his nonperformance would constitute a fraud on plaintiff sufficient to warrant the creation of a constructive trust. The evidence, however, is all to the contrary, defendant having executed a deed to the partners which they failed to call for for over a period of five years and which was finally destroyed in a fire.

Boiled down to its essentials and ignoring such matters of defense as limitations, *laches* and rescission, we have here nothing more than an oral contract for the sale of land, executed as to the vendee and executory as to the vendor, wherein, after a period of years, the vendor was guilty of a simple breach of contract. Stated plainly, the Statute of Frauds renders the vendee's rights under the contract unenforceable. The record is utterly barren of any facts demanding the creation of an implied trust. Again ignoring all matters of defense except the Statute of Frauds, upon defendant's failure to perform, plaintiff's only remedy was an action at law on the theory of a *quasi* contract to recover the reasonable value of the consideration furnished to defendant, pursuant to the terms of the unenforceable oral contract. Viewed from any angle, the testimony most favorable to plaintiff simply does not establish any facts calling for the creation of an implied trust. As observed by Bogert in his excellent work on Trusts: "On rare occasions a contract vendee has sought to charge the contract vendor as a constructive trustee of the land when the latter has refused to perform and has set up the Statute of Frauds on account of the informality of the contract. * * * [In] these cases it is patent that equity cannot decree a constructive trust without overriding the Statute of Frauds. To enforce a constructive trust

for the oral contract vendee is of the same effect as to decree specific performance. Equity is bound by the Statute of Frauds, just as are the courts of law. Accordingly, it is well established that the mere fact that a contract vendor has refused to carry out an informal voidable contract to sell land is not adequate ground on which to obtain a constructive trust in favor of the vendee." 3 Bogert on Trusts and Trustees, sec. 479.

The decree of the circuit court of McLean County is reversed and the cause is remanded, with directions to enter a decree dismissing the complaint for the want of equity.

*Reversed and remanded, with directions.*